**BELKIN et al. v. RAY et al.**

**No. 9370.**

Court of Civil Appeals of Texas. Austin.
April 14, 1943.

Rehearing Denied April 28, 1943.

Collins, Jackson, Snodgrass, & Blanks, of San Angelo, for appellants.

Upton, Upton, & Baker, J. W. Stovall, and Hughes, Hardeman, & Wilson, all of San Angelo, for appellees.

BLAIR, Justice.

This is a suit for the construction of the will of Harry Marks, deceased.

Paragraphs III and IV of the will read:

"III. I give, devise and bequeath the sum of $500.00 in cash to be paid as hereinafter directed to the following named associations, corporations and persons: 1. New Orleans Orphan Asylum (Jewish), New Orleans, La. 2. Denver Hospital (Jewish) Denver, Colorado. 3. Kings Daughters of San Angelo. 4. Mrs. A. S. Willick, New York City. 5. Miss Bertha Willick, New York City. 6. Miss Mildred Willick, New York City. 7. Mrs. Pearl (Weiner) Kraft, Los Angeles, California. 8. Sadie Weiner, New York City. 9. Annie Goren, wife of Max Goren. 10. Gladys Becker, wife of Fred Becker, Houston, Texas. 11. Fannie Goldberg,

wife of Manny Goldberg, San Antonio, Texas. 12. Mitchel Goren, son of Max Goren. 13. Sarah Ray, wife of H. H. Ray, San Angelo, Texas. 14. Helen Miller, wife of Maurice Miller, Denver, Colorado.

"IV. I give, devise and bequeath the sum of $100.00 to be paid as hereinafter provided to the following: 1. Burton H. Goldman, Armond S. Goldman, sons of Dave Goldman."

The trial court construed paragraph III to provide that each of the fourteen legatees named is entitled to receive $500, and paragraph IV to provide that each of the two legatees named is entitled to receive $100.

Appellant, Fannie Belkin, the residuary legatee or devisee under the will, contends that the language of paragraph III is plain and unambiguous and means that the sum of $500 is to be equally divided between the fourteen legatees named, and that the language of paragraph IV is likewise plain and unambiguous and means that the sum of $100 is to be equally divided between the two legatees named. Appellant further contends that in construing the will as it did the trial court necessarily added or inserted the word "each" in these two paragraphs of the will, in violation of the rules stated in 44 Tex.Jur., pp. 684, 729, §§ 135, 165, to the effect that if there is no ambiguity in the language of the will, the intention of the testator must be drawn from its language; and that it is not within the province of the court in construing a will to amend, reform, remake, revise, or rewrite it.

These same rules, however, would likewise condemn the contention of appellant that testator intended to divide the sum of $500 equally between the fourteen legatees named in paragraph III, and the sum of $100 equally between the two legatees named in paragraph IV, because to sustain the contention the court would under the same reasoning be compelled to add or insert in each paragraph of the will the words "equally divided," or "share and share alike," or words of similar import. Thus an ambiguity arises from the language used as to the amount testator intended to bequeath or devise to each of the legatees named in these two paragraphs of his will, and extrinsic evidence may be resorted to to ascertain the testator's intention in this respect.

The agreed facts show that Harry Marks and Ray Marks were husband and wife, having married March 2, 1920, and lived together as such until the death of the wife on July 29, 1940. Harry Marks remained single until his death on August 14, 1941. No children were born of this union. This was the only marriage of Harry Marks. Mrs. Marks had been married to one Willick prior to her marriage to Harry Marks. Willick died prior to her marriage to Marks, and of this marriage three children were born, namely, a son, A. S. Willick, now deceased, and two daughters, Annie (Willick) Goren and Sarah (Willick) Ray, both of whom are living.

Harry Marks and Ray Marks each left a will, and each will was probated and appears in evidence herein. Mitchel Goren is the executor of the estate of Harry Marks, and H. H. Ray is the executor of the estate of Ray Marks, and both are parties to this suit.

The relationship of the individuals named in paragraphs III and IV to Harry Marks is as follows:

Mrs. A. S. Willick is the surviving wife of his stepson. Bertha and Mildred Willick are the daughters of his stepson. Annie Goren and Sarah Ray are his stepdaughters. Gladys Becker is the child of a stepdaughter, and Fannie Goldberg, Mitchel Goren, and Helen Miller are the children of a stepdaughter. Mrs. Pearl (Weiner) Kraft and Sadie Weiner are nieces of testator; and Burton H. Goldman and Armond S. Goldman, named as legatees in paragraph IV, are not related to testator.

Appellant, Fannie Belkin, is the sister of testator.

The estate of both Harry Marks and Ray Marks consisted of real estate in San Angelo and Dallas, Texas, appraised in the Ray Marks estate at $22,500. No debts of consequence were owed by either estate. The will of Harry Marks is dated July 11, 1941, and paragraph V reads: "V. I give, devise and bequeath the entire residue of my estate to my sister Fannie Belkin of Columbus, Ohio, if she be living at the time of my death, and if she not be living at the time of my death, then the residue of my estate I give and bequeath to her children, then living, share and share alike."

Paragraph III does not bequeath $500 to a class, but specifically to fourteen named legatees, numbered from 1 to 14, and to

whom $500 is directed to be paid. No language is used which indicates that testator intended to equally divide $500 between the fourteen legatees named, with the result that each legatee would receive only $35.-71285 plus. To direct that the $500 bequest be so divided as to create such a circulating decimal is not usual, but is unusual. Testator's estate was sufficient to pay the $500 bequest to each legatee named in paragraph III, and to pay the bequest of $100 to each legatee named in paragraph IV, and to leave to his sister, the residuary legatee, or her children, a considerable estate. Three of the legatees named in paragraph III are charitable institutions, and the remainder of the legatees are related to testator by blood or marriage. He would not bequeath to each of these legatees, and particularly his relatives, only $35.-71285 plus, and then by paragraph IV bequeath to Burton H. and Armond S. Goldman, who are not related, $50 each according to the contention of appellant, or $100 each according to the contention of the Goldmans. Under such facts testator would be presumed to have intended to give more to his relatives than to non-relatives, because under well settled rules of construction of wills his relatives are the natural objects of his bounty and care.

Nor does paragraph IV bequeath $100 to a class, but specifically to the two named legatees to whom testator provides that $100 shall be paid. No language of this paragraph indicates that testator intended that $100 be equally divided between these two legatees. Testator makes no provision in either paragraph III or IV as to how the $500 or the $100, if considered as a class bequest shall be divided in the event of the death of either legatee prior to his death. He does provide for such a contingency with regard to his residue estate.

By paragraph V he bequeaths his residue estate to his sister, if living, but if not, testator provides that "I give, and bequeath to her children, then living, share and share alike." He knew the name and number of each legatee in paragraphs III and IV. He did not know the number of the children his sister might leave living at the time of his death, nor their names. This comparison clearly shows that testator did not intend by paragraphs III and IV to make a bequest to a class, but by paragraph V did intend as to the contingent residuary estate to make a bequest to a class. the living children of his sister.

■ In Hagood v. Hagood, Tex.Civ. App., 186 S.W. 220, 225, the court says: "A 'class', as used in the law of wills, is where several persons answering the same description sustain the same relation to the legacy so that one word describes them all; each takes an equal share in the property, and each takes originally, and not by way of substitution or derivatively, and each takes absolutely. A number of persons are said to form a 'class' when they can be designated by the same general name as 'children', 'grandchildren', 'nephews', 'brothers', or 'sisters'. The gift must be an aggregate sum to a body of persons uncertain in number at the time of the gift."

See, also, Ursula McMullen v. Block, Tex.Civ.App., 168 S.W.2d 667, writ refused W. M.

■ When the will is viewed in its entirety and under the aforementioned facts and circumstances surrounding the testator when he executed it, we think the trial court correctly construed paragraph III to provide that each of the fourteen legatees named is entitled to receive $500, and paragraph IV to provide that each of the two legatees named is entitled to receive $100.

No Texas case in point has been found or cited. The case most nearly in point from other jurisdictions is that of Application of Smith, 94 N.J.Eq. 1, 118 A. 271, from which we quote the provisions of the will and the court's holding, as follows:

"I give and bequeath to my children Sarah Frances Smith, William Henry Smith and Mary Anetta Smith, the sum of $1,000 to be paid to the said Sarah and William H. Smith as soon as conveniently can be after my decease and to Mary Anetta Smith in the following manner, that is to say: To her mother my wife Sarah Elizabeth Smith in trust for her until she arrives at the age of 21 years then the principal and accrued interest shall be paid to her."

"The first question to be solved is: Is the legacy of $1,000 a gift of that amount to each of testator's three children, or of that sum to be divided among them?

"In Taylor v. Tolen, 38 N.J.Eq. 91, Chancellor Runyon, quoting the bequest on page 93, which is to the 'Rochester New York Theological Seminary and to Hamilton Theological Seminary $10,000,' states at page 97 that a question was raised on this bequest whether the legacy was of $10,000

to both, or of that sum to each, and observed that it was $10,000 to each and not that sum to the two; that the testator did not say, 'I give to the two $10,000, but to one and (also) to the other that sum.

"This is entirely apposite as a precedent and quite dispositive of the question in favor of the petitioners, * * *."

■ The will of Ray Marks, the deceased wife, recites that:

"My estate consists of real property in the cities of Dallas, San Angelo, Odessa and elsewhere in the State of Texas. There is also to be included in this estate other property such as furniture and household goods. This entire estate is the community property of my husband Harry Marks and myself, having been acquired jointly after our marriage to each other. There is to be exempted, however from this community estate my initial investment thereon of Three Thousand ($3000.00) which I designate as my own individual property as I acquired same prior to my marriage to Harry Marks. There is also to be exempted from said estate the initial investment thereon of my husband Harry Marks' Sixty-five Hundred Dollars ($6500.-00), which I designate as his individual property, as said Harry Marks acquired this Sixty-five Hundred Dollars ($6500.00) prior to our marriage to each other."

The will of Harry Marks, executed after the death of his wife, Ray Marks, recites that: "My estate consists of real property in the cities of Dallas and San Angelo, Texas; and other personal property such as household furniture, automobile, cash in the First National Bank, San Angelo, Texas, and note for $200.00 signed by L. P. Ray of San Angelo, Texas, dated March 1st, 1941. With exceptions as hereinafter stated, my estate is the community property of my wife Ray Marks, deceased, and myself, having been acquired jointly after our marriage to each other. I exempt from this estate Sixty-five Hundred ($6500.00) Dollars, representing my initial investment therein, which I designate my own individual property, having acquired same prior to my marriage to said Ray Marks, deceased. I also exempt from said estate the individual property of my wife Ray Marks, deceased, amounting to $3000.00, same having been acquired by her prior to our marriage to each other.

An instrument signed and acknowledged by both Harry Marks and Ray Marks, attached to the will of Ray Marks as it appears on file in the office of the County Clerk of Tom Green County, contains the same or similar statements with respect to $6,500 being the separate property of Harry Marks, and $3,000 being the separate property of Ray Marks. Each will then recites that it disposes of such separate estate and the one-half community interest of the respective spouses.

The trial court held that the statement in the will of Harry Marks to the effect that he had invested $6,500 of his separate funds in the community estate of himself and Ray Marks, did not, as a matter of law, fix the liability of the community estates to his separate estate in the sum of $6,500; but that such statement was one subject to be rebutted by competent evidence, which matter must first be presented to the executor of his estate for adjustment, and which matter might then be adjudicated in a proper suit for that purpose. The court further held as follows:

"That this judgment is without prejudice to the estate of Harry Marks, deceased, and the estate of Ray Marks, deceased, to adjust any equities concerning the separate funds of either that were used by either or both in behalf of the community estate; that is, if either estate owes the other estate for separate funds having been advanced, this may be determined and adjusted by the Executors, and their rights will not be prejudiced by this decree."

With respect to this holding of the trial court appellant contends as follows: "The trial court erred in holding that the provisions of the wills of Harry Marks and wife Ray Marks to the effect that out of their property the sum of $6500.00 should be set apart to Harry Marks and constitute a part of his estate and the sum of $3000.-00 should be set apart to and become a part of the Ray Marks estate were not valid provisions binding upon the Executors of their wills and the beneficiaries thereof."

The trial court did not declare these provisions of the wills to be void, but held that the statements that Harry Marks had invested $6,500 and that Ray Marks had invested $3,000 in the community estate out of their respective separate estates merely raised a question of fact as to whether or not the community estate of the husband and wife is indebted to the separate estate of either, or whether the separate funds, if any, of the husband or wife had been so commingled with the community estate as

to be incapable of identification. We think the trial court correctly disposed of this issue.

The statements with respect to the $6,500 and $3,000 being separate funds of the respective spouses are general in nature in each of the three instruments involved. In neither instrument is it stated nor shown that such separate funds were a part of the original purchase price of any community property; or that they were used for improvement of any community estate; or that such separate funds were used to pay community debts under circumstances such as would entitle the separate estates to reimbursement for the amount of any indebtedness paid for the community estate. The evidence showed that neighbors and friends were called upon to try to adjust the claims of Marks and his wife with respect to this very matter, long after the separate funds were claimed to have been so invested, and under circumstances from which it might be reasonably inferred that the parties may have been mistaken as to the status of such funds, or that such funds had been so mixed or commingled with the community estates as to be incapable of identification. See Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Moor v. Moor, Tex.Civ.App., 57 S.W. 992, 999; Saylor v. Saylor, Tex.Civ.App., 20 S.W.2d 229, writ dismissed; Jenkins v. Robinson, 169 S.W.2d 250, decided March 10, 1943, by this court.

■ The remaining question presented attacks the holding of the trial court that a part of Lot 2, Block 896/c in the City of Dallas, described by metes and bounds in the judgment, was the separate property of Ray Marks, deceased; and that neither the executor of the will of Harry Marks, nor any beneficiary named therein had any interest in such property.

On this question the trial court found that on March 31, 1925, Harry Marks conveyed this property by deed to his wife, Ray Marks, for a recited consideration of $1 and love and affection, as her separate property; that on or about January 5, 1933, in order to convert this separate property of the wife into the community property of herself and her husband, she executed a deed to a trustee for a recited consideration of $10, which was not paid; and that on or about January 10, 1933, the trustee named, for a recited consideration of $10, which was not paid, executed a deed conveying the property to Harry

Marks and his wife, Ray Marks; and that the intention of Harry and Ray Marks at the time of the execution of these two deeds was to give and convert this separate property of the wife into the community property of the spouses.

The scrivener of the last two mentioned deeds testified that he prepared them under the direction of Harry Marks and his wife, Ray Marks, and that they expressed an intention to convey one-half of the property described in the deeds to Harry Marks; and that he told them that could be accomplished by the two deeds; that the $10 recited as consideration was not paid. Another witness testified that when the parties were having some difficulty about their property that Harry Marks said that he wanted this property "to go back as community property; in other words, to go back to both of them."

In support of her contention appellant cites from Johnson v. Durst, Tex.Civ. App., 115 S.W.2d 1000, 1004, writ dismissed, the following: "Also, generally speaking, the rights of husband and wife to contract with each other are thus summarized by Judge Brown in Sparks v. Taylor, 99 Tex. 411, 90 S.W. 485, 489, 6 L.R.A.,N.S. 381: 'The husband may enter into contracts with his wife concerning their property rights. He may purchase land from her and may sell land to her. He may borrow money from her, and he may pay the debt, just as he would to any other creditor. He may become her trustee or agent for the investment of funds which belong to her, the same as he may assume those relations to any other person. In fact his power to contract with her seems to be limited only by her incapacity to convey land to him because of the fact that he cannot join her in the conveyance.'"

Appellant also cites the case of First Methodist Church v. Anderson, Tex.Civ. App., 110 S.W.2d 1177, writ dismissed, to the effect that a married woman may effect a gift of her separate property to her husband by joining in a deed to a trustee, who in turn deeds it to the husband.

With these decisions we find no fault, but do not believe they are in point in the instant case. Here the wife was not trying to give her husband property, but they were trying to convert her separate property into community property so that each might own a one-half interest in the property as such, and the trial court found upon suffi-

çient evidence that that was what the husband and wife in the instant case tried to do.

■ The authorities are uniform in holding that a wife may not convey her separate property by a deed of herself and husband to a trustee under mutual agreement that the trustee will reconvey it to the husband to hold as community property. Kellett v. Trice, 95 Tex. 160, 66 S.W. 51. Nor can a husband and wife by partition of the community property make it the separate property of either. McDonald v. Stevenson, Tex.Civ.App., 245 S.W. 777. No agreement to that effect is valid. Pevehouse v. Lubbock Nat. Bnk., Tex.Civ. App., 79 S.W.2d 1107; Gorman v. Gause, Tex.Com.App., 56 S.W.2d 855. And in Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799, the Supreme Court held that the legislature had no authority to enact a law that would change the status of property other than as defined by the Constitution.

The judgment of the trial court is affirmed.

Affirmed.