# JANUARY, 1944

FANNIE BELKIN ET VIR V. H. H. RAY ET AL.

No. 8132. Decided November 24, 1943.
Rehearing overruled January 5, 1944.
(176 S. W., 2d Series, 162.)

72

*Collins, Jackson, Snodgrass & Blanks,* of San Angelo, for petitioners.

Both the trial court and the Court of Civil Appeals erred in holding that the portion of the lot involved in this suit was the separate property of Ray Marks, deceased. Tackett v. Cunningham, 91 S. W. (2d) 965; Reynolds v. McMann Oil & Gas Co., 11 S. W. (2d) 778, 785; Crayton v. Phillips, 4 S. W. (2d) 961, 963.

*Upton, Upton & Baker, Lee Upton, Hughes, Hardeman & Wilson, Sedberry & Williams* and *J. W. Stovall*, all of San Angelo, for respondents.

MR. JUSTICE CRITZ delivered the opinion of the Court.

Mrs. Fannie Belkin, residuary legatee in the will of Harry Marks, deceased, joined by her husband, filed this suit in the District Court of Tom Green County, Texas, against all the other legatees in such will, and against the two independent executors named therein, to construe the same and determine the rights of the parties thereunder. H. H. Ray, independent executor of the will of Ray Marks, deceased, wife of Harry Marks, filed intervention. We will not attempt to detail the pleadings. It is sufficient to say that they raise the questions of law which we will decide. Trial in the district court resulted in a judgment the effect of which will later appear in this opinion. Mrs. Belkin appealed from such judgment to the Court of Civil Appeals. That court affirmed the judgment of the district court. 171 S. W. (2d) 507. Mrs. Belkin, joined by her husband, brings error.

It appears that Harry Marks and Ray Marks were husband and wife. Both were deceased at the time of this trial in the district court. Both died testate, and their wills have been duly probated.

The will of Harry Marks, after providing for his just debts and funeral expenses, contains two specific bequest provisions. It then bequeaths all the residue of his estate to Mrs. Fannie Belkin, his sister.

We are first called upon to construe the two provisions just mentioned. They are Paragraphs III and IV of such will. Such paragraphs read as follows:

"III. I give, devise and bequeath the sum of $500.00 in cash to be paid as hereinafter directed to the following named associations, corporations and persons: 1. New Orleans Orphan Asylum (Jewish), New Orleans, La. 2. Denver Hospital (Jewish), Denver, Colorado. 3. Kings Daughters of San Aneglo. 4.

Mrs. A. S. Willick, New York City. 5. Miss Berthan Willick, New York City. 6. Miss Mildred Willick, New York City. 7. Mrs. Pearl (Weiner) Kraft, Los Angeles, California. 8. Sadie Weiner, New York City. 9. Annie Goren, wife of Max Goren. 10. Gladys Becker, wife of Fred Becker, Houston, Texas. 11. Fannie Goldberg, wife of Manny Goldberg, San Antonio, Texas. 12 Mitchell Goren, son of Max Goren. 13 Sarah Ray, wife of H. H. Ray, San Angelo, Texas. 14 Helen Miller, wife of Maurice Miller, Denver, Colorado.

"IV. I give, devise and bequeath the sum of $100.00 to be paid as hereinafter provided to the following: 1. Burton H. Goldman, Arnold S. Goldman, sons of Dave Goldman."

The district court entered a judgment construing Paragraphs III and IV of this will, respectively, as constituting a bequest of $500.00 to each of the fourteen parties and persons named in Paragraph III, and as constituting a bequest of $100.00 to each of the two persons named in Paragraph IV. The Court of Civil Appeals affirmed such ruling. By proper points, Mrs. Belkin contends that Paragraph III in this will constitutes a bequest of $500.00 to the fourteen persons and parties named therein jointly, or as a class, and that Paragraph IV constitutes a bequest of $100.00 to the two persons named therein in the same way.

■ After a careful consideration of the question, we are convinced that whether Paragraph III and IV of this will, respectively, bequeath the named sums of money to the persons or parties mentioned therein, as a class,—that is jointly,—or whether each person or party mentioned takes the amount of the sum named individually, must be determined by a reading of the entire will, and by viewing the same in the light of surrounding facts and circumstances. Application of Smith T. of Cl. of N. J., 94 N. J. Eq. 1, 118 Atl. 271; In re Hawgood's Estate, 37 S. D. 565, 154 N. W. 117. Paragraph III in this will is somewhat ambiguous and uncertain as regards the question here ininvolved; and, in instances of ambiguity or uncertainty, it is proper to look to surrounding facts and circumstances to ascertain the testator's intent. 44 Tex. Jur., p. 349, sec. 184, and authorities there cited.

■ When we come to examine the surrounding facts and circumstances regarding Paragraph III of this will, we find that three of the beneficiaries named therein are charitable institutions, nine of the other eleven beneficiaries are steprelatives of the deceased, and two are nieces of the testator. Testator married

a widow. He never had any children of his own. He therefore visited a part of his bounty on his stepchildren, and their descendants. He named one for his sisters as his residuary legatee in another paragraph in this will. In this paragraph he made two of his own nieces beneficiaries. To our minds, viewed in the light of the above circumstances, it would be giving this will an unreasonable construction to say that this testator intended to give these beneficiaries only the sum that would be produced by dividing $500.00 by 14. This would be construing it as bequeathing the paltry sum of $35.71-plus to each beneficiary. Finally, in regard to this matter, we note that in this bequest the will numbers each beneficiary, from 1 to 14, inclusive. To our minds this is a circumstance tending to show that $500.00 is given to each. We will again call attention to this matter when we construe Paragraph IV.

A reading of Paragraph IV of this will shows that it is a bequest of $100.00 to two persons. Neither of these persons bears any relationship to the testator. It is significant that this paragraph numbers or classifies the entire bequest as "1." This demonstrates to us that he intended to make a joint bequest of $100.00 to the two persons named in Paragraph IV.

From the above it is evidence that we construe Paragraph III of this will as a bequest of $500.00 to each of the fourteen parties and persons named therein. It is also evident that we construe Paragraph IV as a bequest to the two persons named therein jointly,—that is, a bequest of $50.00 to each.

The will of Harry Marks, executed after the death of his wife, Ray Marks, contains the following provision:

"II. My estate consists of real property in the cities of Dallas and San Angelo, Texas; and other personal property such as household furniture, automobile, cash in the First National Bank, San Angelo, Texas, and note for $200.00 signed by L. P. Ray of San Angelo, Texas, dated March 1st, 1941. With exceptions as hereinafter stated, my estate is the community property of my wife Ray Marks, deceased, and myself, having been acquired jointly after our marriage to each other. I exempt from this estate Sixty Five Hundred ($6500.00) dollars, representing my initial investment therein, which I designate my own individual property, having acquired same prior to my marriage to said Ray Marks deceased. I also exempt from said estate the individual property of my wife Ray Marks deceased amounting to $3000.00, same having been acquired by her prior to our marriage to each other. The part I am disposing through this

will is my individual property (one-half of the difference between my entire estate and the sum of the exempted amounts designated as the individual property of my wife Ray Marks deceased and myself). The other part belongs to the estate of my wife Ray Marks deceased."

As shown by the opinion of the Court of Civil Appeals, "An instrument signed and acknowledge by both Harry Marks and Ray Marks, attached to the will of Ray Marks as it appears on file in the office of the County Clerk of Tom Green County, contains the same or similar statements with respect to $6,500 being the separate property of Harry Marks, and $3,000 being the separate property of Ray Marks. Each will then recites that it disposes of such separate estate and the one-half community interest of the respective spouses."

The will of Ray Marks contains the following provision:

"2. My estate consists of real property in the Cities of Dallas, San Angelo, Odessa and elsewhere in the State of Texas. There is also to be included in this estate other property such as furniture and household goods. This entire estate is the community property of my husband Harry Marks and myself, having been acquired jointly after our marriage to each other. There is to be exempted, however, from this community estate my initial investment therein of Three Thousand ($3000.00) which I designate as my own individual property as I acquired same prior to my marriage to Harry Marks. There is also to be exempted from said estate the initial investment therein of my husband's Harry Marks' Sixty Five Hundred ($6500.00), which I designate as his individual property, as said Harry Marks acquired this Sixty Five Hundred Dollars ($6500.00) prior to our marriage to each other. The part I am disposing through this will is my own individual property of Three Thousand Dollars ($3000.00), designated as my initial investment in the said estate; and my legal one-half of the Community Property, consisting of one-half of the difference between my entire estate and the exempted initial investments made by myself and husband, Harry Marks. The other part belongs to my husband, Harry Marks."

The trial court adjudged that the respective statements in these two wills, to the effect that Harry Marks had invested $6500.00 and Ray Marks had invested $3000.00 in their community estate out of their respective separate estates was not conclusively binding, "but merely raised the question of fact as to whether or not the community estate of the husband and

wife is indebted to the separate estate of either, or whether the separate funds, if any, of the husband or wife had been so commingled with the community estate as to be incapable of identification." The opinion of the Court of Civil Appeals upholds the ruling of the trial court.

■ We are not in accord with the above ruling. To our minds, looking through form to substance, the will of Ray Marks, in legal effect, makes an express bequest in favor of Harry Marks, to be paid out of their community estate, of $6500.00. In this regard the Ray Marks will, in legal effect, states that she desires that $6500.00 be set apart out of their joint properties for the credit of the estate of Harry Marks, upon condition that $3000.00 be set aside out of the same properties for the credit of her estate. The will of Harry Marks, in legal effect, does the same thing. The will of Harry Marks designated $3000.00 of the joint or community property as the separate property of his wife; and the will of Ray Marks designates $6500.00 of the joint or community property as the separate property of the husband. To our minds this is the legal effect of the two wills. It is true that the wills recite that the community was indebted to the husband in the sum of $6500.00, and to the wife in the sum of $3000.00; but the bequests are unconditional, and do not leave the matter open for litigation as to the truth or real facts regarding these matters. These two clauses in these two wills undoubtedly influenced each of these testators in regard to the disposition of their entire respective estates. Under the express language of these two wills, these two clauses constituted the consummation of a mutual agreement between the husband and wife; and, therefore, as to such provisions, these wills are mutual. It is the settled law that a husband and wife may make mutual wills, containing reciprocal provisions. Larabee v. Porter (Civ. App.), 166 S. W. 395 (writ refused) ; Wagnon v. Wagnon (Civ. App.), 16 S. W. (2d) 366 (writ refused) ; French v. French (Civ. App.), 148 S. W. (2d) 390 (writ dismissed, correct judgment). It is evident that we hold that the provisions of these two wills with reference to the $6500.00 and the $3000.00 must be given effect.

On May 19, 1924, B. Harris and wife conveyed to Harry Marks a part of Lot No. 2, in Block No. 896/C, in the City of Dallas, Dallas County, Texas. This deed recites a cash consideration of $5000.00. On March 31, 1925, Harry Marks conveyed this property to his wife, Ray Marks. This deed recites a cash consideration of $1.00 and love and affection. It-also recites that the property is conveyed to Ray Marks as her separate

estate. On January 5, 1933, Ray Marks, joined by her husband, Harry Marks, conveyed the property to one H. H. Ray, for a recited consideration, which was not paid, of $10.00. On January 7, 1933, H. H. Ray and wife conveyed this property to Harry Marks and wife, Ray Marks, for a recited consideration, which was not paid, of $10.00.

It goes without saying that by his deed to his wife, Harry Marks constituted this property the separate estate of his wife. 23 Tex. Jur., p. 157, sec. 128.

It is not necessary for us to here determine whether the deed from Ray Marks and husband, Harry Marks, to H. H. Ray and the deed from H. H. Ray and wife to Harry Marks and wife, Ray Marks, did or could have the effect of making the property the community property of Harry Marks and wife in a technical sense, for if they could not have that effect they at least operated to convey the property to Marks and wife jointly so that each owned an undivided one-half interest therein. Riley v. Wilson, 86 Texas 240, 24 S. W. 394; Kellett v. Trice, 95 Texas 160, 66 S. W. 51; Taylor v. Hollingsworth, 142 Texas 158, 176 S. W. (2d) 733. In this particular instance the property passed to the devisees named in the will in the same manner, whether it was the community property of the husband and wife or was merely owned jointly by them.

■ The trial court decreed that, since it was shown that the intent and purpose of Harry Marks and Ray Marks, by the two deeds last above mentioned, was to constitute this property their community property, and since community property cannot be so constituted, this property remained the esparate estate of the wife. The trial court reached the above conclusion by admitting and considering parol evidence, which he construed to the effect that Mr. and Mrs. Marks intended by the above deeds to constitute this property their community property. In our opinion, such evidence was not admissible. As we have already shown, the legal effect of the two deeds here involved was to constitute this property the joint property of Harry and Ray Marks, and it was error to admit parol evidence to contradict the plain import and legal effect of such written instruments. Kahn v. Kahn, 94 Texas 114, 58 S. W. 825; Murphy v. Dilworth, 137 Texas 32, 151 S. W. (2d) 1004. This record contains no pleading raising the question of fraud, accident, or mutual mistake.

In Kahn v. Kahn, supra, Mr. and Mrs. Kahn conveyed certain real property in Wichita Falls to J. H. Barwise, Jr., who

later conveyed it to Mr. Kahn. Thereafter Mr. Kahn executed a deed in favor of Mrs. Kahn, conveying the same property to her for her separate use and benefit. Mr. Kahn later claimed that he did not intend to convey such property to his wife as her separate property. The court in passing upon the issue thus presented said:

"The defendant was permitted, over objection of plaintiff, to offer parol evidence for the purpose of showing that he did not intend by this deed to convey to his wife in her separate right his interest in the property. The substance of his evidence was that the purpose of the conveyance was to keep peace in the family, as his wife was making a disturbance, and demanding that the property be reconveyed to her; that he did not intend by the deed to convey it to her, or to make it her separate property, and had always so stated. The charge of the court made the determination of the question whether or not the land belonged to the community or to the separate estate of the wife depend upon the fact to be determined from the evidence,— whether or not Kahn intended by the deed to make it such. We are of the opinion that, without proof of fraud or mistake in the insertion of the recitals in the deed, parol evidence was not admissible to show that the maker of it did not intend to convey the property to his wife as her separate property, and this for the reason that the deed on its face clearly expressed such intent."

In the recent case of Murphy v. Dilworth, supra, this Court had before it an issue. as to the right to hear parol evidence as to the intention of parties to certain conveyances. In passing upon this question the opinion states:

"The trial court permitted the introduction of parol evidence as to what was said by the parties in their negotiations leading up to the making of the contract, as well as their interpretation thereof afterwards, and, based thereon, held that the reservation contained in the deed was actually 'a mineral reservation of one-half of the royalty under said lease then on said land, and any and all mineral leases thereafter to be placed on said land * * *' and entered judgment accordingly. * * *

"The reservation contained in the deed appears on its face to be plain and unambiguous. In clear language it reserves an undivided 1/16 interest in the minerals in and under said land, and makes no reference whatever to any royalty to be paid under any existing or subsequent lease. There is no suggestion in the pleadings of fraud in the making of the contract or of

accident or mistake in reducing it to writing. Ordinarily, where the terms of a written contract are thus plain and unambiguous, parol evidence is inadmissible to vary the terms or to show the construction placed thereon by the parties at the time or subsequent to the making thereof. Henry v. Phillips, 105 Texas 459, 151 S. W. 533; Soell v. Haddon, 85 Texas 182, 19 S. W. 1087."

We here wish to say that we do not consider that the instant case calls upon us to decide whether it is possible to constitute separate property of the wife, or for that matter of the husband, the community property of the husband and wife, in the technical sense of the term "community property." As already stated, here we have written deeds, which, to say the least, operated to convey this property to Harry Marks and Ray Marks so that each would own an undivided one-half interest therein; and we hold that such deeds cannot be contradicted so as to destroy this effect, without pleading and proof of fraud, accident, or mistake. No such pleading or proof is contained in this record.

We do not think the evidence in this case raises the question of fact, even if we should admit that an intention to make this property community property, in the technical sense of that term, might vitiate these deeds. David Goldman, who drew these deeds, testified to facts which would show that it was intended by Mr. and Mrs. Marks to execute papers which would return to Mr. Marks a one-half interest in this property. The legal effect of this transaction certainly did that. Mrs. Willick testified that "he (Harry Marks) wanted it to go back as community property; in other words, to go back to both of them." The evidence shows that both Mr. and Mrs. Marks were uneducated people, and it is not probable that they understood the technical meaning of the term "community property." Mrs. Willick's testimony, taken as a whole, shows that they wanted the property to go back to both of them. The transaction we have detailed did this. It caused the property to belong to both of them, and that is undoubtedly what Mr. and Mrs. Marks wanted to accomplish. To our minds, the testimony of each of these witnesses merely shows that Mr. and Mrs. Marks wanted to establish this lot as their joint property, and that in doing so they hardly had in mind any technical distinction between a community ownership and a mere joint ownership. The transaction can be given effect as a joint ownership, and under the facts of this record that ought to be done.

■ It may be argued that unless the property described in the deeds above mentioned be regarded as "community property"

of Ray Marks and Harry Marks, in the technical sense of the term "community property," neither Paragraph "II" in the Ray Marks will nor Paragraph "2" in the Harry Marks will can be given effect in regard thereto. In this connection, it may be argued that such respective paragraphs refer only to "community property" in the technical sense of that term. We are of the opinion that each of the above-mentioned paragraphs, in legal effect, explains what the respective testators meant by the term "community property." In this connection, we call attention to the fact that in each will it is, in legal effect, stated that the property is "community property" because of "having been acquired jointly after our marriage to each other."

The legal effect of this statement in the wills is to say that by the term "community property" is meant the property acquired jointly after marriage.

The judgments of the Court of Civil Appeals and district court are both reversed and set aside, and judgment is here rendered in accordance with this opinion.

Opinion delivered November 24, 1943.

Rehearing overruled January 5, 1944.