## Speakman Estate

*Paul A. Davis, 4th, Smillie, Bean, Davis & Tredin-nick* and *William H. S. Wells, Saul, Ewing, Remick & Saul,* for accountant.

*Ronald Fleer, Eric A. McCouch, Drinker, Biddle & Reath, J. Brooke Aker, Smith, Cahall & Aker, H. Ober Hess, Ballard, Spahr, Andrews & Ingersoll, Malcolm Campbell* and *Russell Conwell Cooney, Mancill, Cooney, Semans & Hedges,* for legatees.

TAXIS, P. J, July 24, 1959.—In an adjudication of this court dated February 3, 1959, the sum of $325,000 was awarded back to the executor of the above estate to provide for possible claims of legatees under item third of the will and for the payment of possible additional death taxes. At a supplemental audit, all interested parties were heard on these claims and this supplemental adjudication is confined to a consideration of these matters.

Frank M. Speakman, testator, died August 2, 1956. His net estate after payment of all debts and claims exceeded $3,000,000. He had prepared a will dated May 19, 1955, which was probated August 8, 1956. The relevant provisions now before the court read as follows:

*"FIRST:* I direct my Executors, hereinafter named, to pay all my just debts and funeral expenses and taxes as soon after my decease as conveniently can be.

*"SECOND:* I direct that the sum of $20,000 be set aside for the purchase of an annuity or other proper agreement, to pay the sum of $100.00 per month to my faithful and helpful maid and housekeeper, Mrs. Margaret White; said payments to start at my demise and continue throughout her lifetime.

*"THIRD:* I further direct that the sum of $20,-000.00 to be given to the following:

Clarence A. Speakman or his wife Bertha, whichever survives

Elizabeth E. Talley or her daughter Marjorie, whichever survives

Lillian S. McClure

Maurice S. Speakman or his wife, whichever survives
Annie Lawton or her husband J. B. Lawton, whichever survives
Frank M. Gimmi or his wife Elsie, whichever survives
Eugene P. Higgins or his wife Marie, whichever survives
Clayton Williams or his wife Ethel, whichever survives
Helen A. Cullen
Catharine S. Robinson

"*FOURTH:* I also direct that the sum of $5,000.00 be paid to each of the following:
Overbrook Baptist Church
63rd St. and Malvern Avenue, Philadelphia, Pa.
Goshen Baptist Church
West Chester, Penna.
Cottage Hill Baptist Church
Mobile, Alabama
Margaret B. Faulkner
Jeanne S. Prickitt

"*FIFTH:* All the residue or balance of my estate to be divided between the University of Pennsylvania and Temple University, of Philadelphia, Pa."

Two questions are presented requiring interpretation of the will:

(1) Does item third in the context of the other provisions of the will evidence an intention on the part of testator that each of the 10 named legatees should receive the sum of $20,000, or does the will indicate that each of these 10 legatees should receive only $2,000, i.e., share the $20,000 sum jointly.

(2) Does the statement of testator set forth in item first of the will relieve the preresiduary legatees from the payment of transfer inheritance tax and also relieve these same preresiduary legatees from proration of Federal estate taxes?

Before proceeding to resolve the first question the auditing judge is faced at the threshhold with an important issue concerning the admissibility of parol evidence.

At the hearing on March 4, 1959, counsel for the individual legatees sought to aid the auditing judge in his interpretation of decedent's will by introducing evidence of the ages, station in life and relationship to decedent of the various legatees mentioned in item third, together with other circumstances which surrounded decedent prior to and at the time he wrote the will in question. To all such testimony counsel for the two residuary legatees objected. They admit that testator was on good terms with all the legatees mentioned in item third, that as to the relatives therein named there existed a close and warm bond of familial affection. The objection of the residuary legatees, however, is that as a matter of law such evidence is inadmissible.

The auditing judge received the testimony but reserved a ruling on its admissibilty.

The function of a court is to ascertain testator's intention from the language of the will. To fulfill this function the court may place itself in the armchair of testator and consider the circumstances surrounding him in order to assist in this function: Britt Estate, 369 Pa. 450; Jackson's Estate, 337 Pa. 561.

"It has been long and well settled, and indeed it is a principle so consonant to reason that the only wonder is that it should ever have been questioned, that all the surrounding circumstances of a testator—his family, the amount and character of his property—may and ought to be taken into consideration in giving a construction to the provisions of his will": Postlethwaite's Appeal, 68 Pa. 477, 480.

On many other occasions the Supreme Court has deemed relevant testimony similar to that offered by

the legatees under item third. The composition of testator's family, its conditions and necessities have been so considered in giving meaning to testator's words: Earle Estate, 369 Pa. 52; O'Reilly Estate, 371 Pa. 349; Shober Estate, 364 Pa. 321; Walker Estate, 376 Pa. 16. Moreover, the relationship which testator enjoyed with his beneficiaries has been considered of importance in determining intent. Cf. Wright Estate, 391 Pa. 405; Shober Estate, 364 Pa. 321.

After careful consideration of the record, the briefs and the able arguments of counsel, I conclude that this court may and should consider all the surrounding circumstances to assist it in interpreting testator's intention expressed in his will, and I now rule that such evidence is admissible and properly a part of the record. Objections thereto are overruled.

Counsel for the individual legatees also offered to prove certain specific declarations by decedent concerning the meaning of his will. The auditing judge excluded these statements. This ruling is now reaffirmed.

As indicated, the first question involves an interpretation of item third. The 10 individual legatees named therein contend that they are each to receive the sum of $20,000. It is the position of the residuary legatees, on the other hand, that testator intended the two universities as residuary legatees to divide the $3,000,000 residue undiminished by the additional $180,000 claimed by the preresiduary legatees, that testator intended the $20,000 sum mentioned in item third to be divided equally among the 10 legatees.

After consideration of the language used by testator in item third and all the surrounding circumstances, I conclude that the proper interpretation of this will is that the 10 legatees mentioned in item third are each entitled to $20,000.

All of these 10 legatees appeared and testified. No useful purpose would be served by outlining in detail the testimony presented. Suffice it to say that Clarence Speakman, Elizabeth Talley, Lillian S. McClure, Maurice S. Speakman and Annie Lawton, the brothers and sisters of this decedent, were all very close to each other and to decedent. The Speakmans were all very close to each other, visiting frequently with each other and each very much concerned and interested in the welfare of the others. These legatees impressed the court with their obvious candor, their sincerity and, above all, their close and congenial associations with decedent.

Frank M. Gimmi is the son of the late Mrs. Speakman's deceased sister, is decedent's namesake and visited with decedent regularly and frequently. Eugene P. Higgins, Clayton Williams and Helen A. Cullen were three of decedent's key employes in his accounting business. It is quite apparent that the loyalty and long service of these three trusted employes were to a marked degree responsible for testator's success in the accounting and actuarial field. Catherine Robinson was employed by decedent off and on for a number of years. After Mrs. Speakman's death decedent and Mrs. Robinson, who was a widow, became close friends. As a matter of fact this decedent spent the last weekend of his life with Mrs. Robinson and her family in Ocean City, N. J.

Under the theory of the residuary legatees the gifts made to Eugene P. Higgins, Clayton Williams and Helen A. Cullen, amounted to $2,000 each. This gift is in vivid contrast with the $5,000 legacies in item fourth given to Mrs. Faulkner and Miss Prichett, both of whom were also in decedent's employ but who had worked for him only relatively short periods of time. It does violence to both reason and common sense to believe that decedent intended the latter two legatees

to receive two and a half times the amounts given to his three long-time trusted key employes or that he intended the gift to his housekeeper, Mrs. White, in item second to be 10 times that of his family and loyal office employes.

Further evidence of testator's concern for the individual legatees contained in item third is contained in a deed of trust executed by testator on July 10, 1956, in which he set aside $200,000 to provide for annuities for seven of the 10 individuals named in item third of the will. The annuities range from $75 to $125 per month. The residuary legatees have pointed out that item second of the deed of trust places a ceiling of $3,600 per year on the amount any of the annuitants may receive, and further provides that any excess income as well as the eventual distribution of principal is to be distributed at the end of the trust to the same legatees taking the residue under the will.

The residuary legatees argue that this deed of trust and the will indicate clearly that the two universities and not the individual legatees were the chief objects of testator's bounty. With this conclusion there can be no doubt. However, the significance of the annuities provided for in the inter vivos trust is that they indicate that the legatees in item third occupied a preferred position in testator's eyes to that of the $5,000 legatees in item fourth of the will. It would be incongruous to suppose that testator, at the time of making his will, meant to favor the legatees in item fourth over those in item third when it is apparent from the trust executed a year later that the legatees in item third were uppermost in his mind.

Koenig's Estate, 28 Dist. R. 397, is of some assistance in deciding this question. There testator provided:

"I will, give and bequeath the sum of Five Hundred Dollars ($500) to the following named persons:

"Frederick Ruh now residing at 689 N. 12th St.

"Emil Ruh now residing at 689 N. 12th St.

"Louis Schaefer now residing at National Park, New Jersey.

"Conrad Schaefer now residing at Darby, Penna.

"Fritz Koenig now residing at Day St.

"Katie Butz (nee Koenig) now residing at 839 N. Lawrence St.

"Sophie Woerner (nee Koenig) now residing at 1721 W. Huntingdon St."

The auditing judge in Koenig's Estate concluded, after a careful consideration of the will, that the gift was $500 to each and in support of his decision referred to the arrangement of the names of the legatees in separate lines, one above the other, the size of the estate, $12,000 or more, and the relationship of the parties who were all first cousins of testator. The court en banc dismissed the exceptions filed by the residuary legatee with this statement:

"After carefully considering the language of this clause of the will, we have arrived at the conclusion that the auditing judge was right in his decision. The arrangement of the names is such as to lead to the belief that the testatrix intended the clause making the gift to apply to each of them separately; they are placed one above the other, and there is no connection between them—even the last name being added without the use of the conjunction 'and'.

"Nor does the fact that the testator uses the word 'sum' have any effect, as the words 'sum of $500' would be just as applicable to a gift to each of that sum as it would be to a gift of that sum among them."

In the present will also it is obvious that testator, as in Koenig's Estate, placed the names of his legatees one above the other with no connection between them and added the last name without the use of the conjunction "and".

Because there is a dissenting opinion by no less eminent a jurist than Judge Gest, it may be profitable to examine the language and, what is more to the point, a resume of the equities which impelled Judge Gest to his conclusion. The dissenting judges were concerned with the gift to the residuary legatee. In that case the residuary legatee was a cousin with whom testator resided and the dissenting judges clearly implied that testator intended mainly to benefit this cousin and, therefore, did not intend to reduce the $12,000 residue by $3,500 by giving $500 to each of the seven other cousins. In the present case each university will receive more than $1,000,000. Compared with these two most substantial gifts approximately $200,000 or six percent of the net estate is at issue in this controversy. In other words the two universities will not be deprived of a significant part of this estate regardless of the result, and testator's prime object of benefiting these two universities will remain substantially intact.

The residuary legatees raise the additional argument that testator clearly meant a single legacy to be shared by the 10 named legatees on the theory that in item fourth of the will he directed that $5,000 "be paid to *each* of the following," naming five legatees, that if he intended to give $20,000 to each of the 10 legatees in item third he could very easily have so stated and used the word "each" as he did in item fourth. (Italics supplied.) However, in Equitable Trust Co. v. Buchenhorst, 154 Pa. 146, a similar inconsistency was involved. There testatrix gave: ". . . unto Mary Kelly and Elizabeth Kelly . . . the sum of $7,000 to each of them when they arrive of age, for which the said Henry C. Buchenhorst is not to pay interest, but is to pay them yearly in the month of October, the sum of $100 for clothing."

The Supreme Court held, page 148: ". . . the intention of the testator as gathered from the body of the will was to provide for each of her granddaughters; and the words 'to each of' should be read into the clause quoted above between the words 'to pay'· and 'them yearly,' so that the clause would read 'to pay to each of them yearly in the month of October the sum of one hundred dollars for clothing.' " In other jurisdictions a somewhat similar result has been obtained. Cf. Haddox v. Jordan, 36 Ohio App. 209, 173 N. E. 11; Taylor v. Tolen, 38 N. J. Eq. 91; Application of Smith, 94 N. J. Eq. 1, 118 Atl. 271; Belkin v. Ray, 142 Texas 71, 176 S. W. 2d 162.

Finally it should be observed that the argument regarding the inconsistency in the use of the word "each" by testator is considerably weakened in the will at hand by a similar inconsistency in the use of the words "to be divided." In item fifth of the will testator provided that the residue was "to be divided between the University of Pennsylvania and Temple University." It is clear that when this testator wanted to "divide" a sum between legatees, he said so in no uncertain words. It therefore can be argued with equal force that had the testator intended the $20,000 in item three to be "divided" among the 10 persons named in item third, he would have stated: "I further direct that the sum of $20,000 *be divided among* the following."

With all the above circumstances and arguments of counsel in mind I conclude that this testator intended that each of the 10 legatees mentioned in item third is to receive $20,000.

The next issue concerns the source· of the payment of Pennsylvania inheritance taxes and Federal estate taxes. Are these death taxes to be paid from the $3,-000,000 residue or are they to be apportioned among

the $20,000 and $5,000 legatees appearing in items second, third and fourth?

It is the contention of the residuary legatees that this testator intended to divide the $3,000,000 residue between themselves undiminished by the death taxes on the aforesaid legacies to testator's brothers and sisters, housekeeper and business associates. The pre-residuary legatees on the other hand contend that testator has clearly manifested an intention in his will that these death taxes are to be borne by the residue. In terms of dollars, if the latter view is adopted, the $3,000,000 residue to the residuary legatees will be reduced by approximately $80,000.

Pennsylvania transfer inheritance tax is levied under the terms of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, 72 PS §2301. The rule concerning the exoneration of legacies from the burden of transfer inheritance taxes as evolved under case law is set forth in Spangenberg Estate, 359 Pa. 353, 355, wherein the court stated, page 355: ". . . an inheritance tax is ultimately payable by the legatee or out of the estate passing to her, unless the will clearly indicates, either expressly or by necessary implication, that the legacy was given free of tax: [citing cases]."

Apportionment of Federal estate taxes is controlled by statute, namely, the Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, 20 PS §881. Section 4(a) of this statute provides: "Apportionment of the estate tax, except as provided in section three, shall be made among the persons interested in property includible in gross estate in the proportion that the value of the interest of each such person bears to the value of the net estate before exemption": 20 PS §884(a).

Section 3(a) of the act states: "A testator . . . may direct how the estate tax shall be apportioned or allocated or grant a discretionary power to another so

to direct. Any such direction shall take precedence over the provisions of this act insofar as the direction provides for the payment of the estate tax or any part thereof from property, the disposition of which can be controlled by the instrument containing the direction or delegating the power to another": 20 PS §884.

After a careful examination of this will, all the surrounding circumstances, the pertinent statutes and cases, I am convinced that this testator intended to give his brothers, sisters, friends and business associates named in the will the full amount of their legacies undiminished by death taxes. Item first of the will clearly and expressly indicates an intention that these legacies were given free of tax. In addition, the remaining provisions of the will raise a necessary implication that these legacies were given free of tax.

Item first of the will contains the following direction:

"I direct my executors hereinafter named, to pay all my just debts and funeral expenses and taxes as soon after my decease as conveniently can be."

Initially it is reasonable to assume that when this testator referred to taxes, he meant to include all death taxes. See Anderson's Estate, 312 Pa. 180, for a discussion of similar language. Secondly, it is of utmost significance that testator has grouped the payment of taxes with the payment of debts and funeral expenses. Where there is a general direction to the executor to pay all debts, expenses of administration and taxes, there is an implied direction that taxes are to be paid from the fund which bears the burden of the debts and expenses. See the cases collected in the annotation in 37 A. L. R. 2d 7, 124. Pennsylvania has applied this rule in Habecker's Estate, No. 3, 43 Pa. Superior Ct. 91, and Horn Estate, 351 Pa. 131. Obviously this testator was aware that his debts and funeral expenses would not be apportioned among the

legatees named in his will but would be paid from the residue of his estate. Similarly, testator intended the taxes occasioned by his death to be paid by the same fund bearing the debts and funeral expenses. This construction is the only interpretation of this will which renders operative the provisions of item first.

Even should there be any hesitancy about the express nature of the direction in item first, the balance of this will creates a very necessary implication that these death taxes are to be borne by the residue and not by these legatees. This implication arises out of the gift in item second of the will which provides as follows: "I direct that the sum of $20,000 be set aside for the purchase of an annuity or other proper agreement, to pay the sum of $100 per month to my faithful and helpful maid and housekeeper, Mrs. Margaret White; said payments to start at my demise and continue throughout her lifetime."

The individual legatees have pointed out that if the $20,000 legacy to the housekeeper is subject to tax, it will be reduced to $15,540, an amount grossly insufficient to provide the $100 annuity for this legatee who was 59 years of age at the time of the death of testator. As a matter of fact the executors did purchase an annuity for this purpose at a cost of $20,780. From an actuarial point of view, therefore, the necessary implication is that testator, an experienced actuary, considered this $20,000 sum to be a net figure, relieved of any taxes by the preceding clause.

The residuary legatees argue, however, that at the time of the execution of the will, testator had a life expectancy of 12 years. Accordingly, the $15,540 net amount would be roughly sufficient to purchase an annuity for his housekeeper should testator's life span match perfectly the annuity tables. However, even should we make the sweeping assumption that this testator was aware of all of the above mentioned fac-

tors and carefully took them into consideration, it would seem unrealistic to suppose that testator expected his own life span to be exactly equivalent to the average life span set forth in the annuity tables. Common sense and ordinary caution direct that a testator, regardless of his age, should design a will containing a testamentary scheme which would be plausible should testator die the very day the will is executed.

In Wright Estate, 391 Pa. 405, a situation similar to the present case was considered by the Supreme Court which decided that the donative scheme of that particular testator was utterly inconsistent with the idea that the gifts to the previous residuary legatees and devisees were to be subject to deductions for any death taxes in connection with decedent's estate. The only reference to taxes in the Wright Estate will was contained in item 56 which empowered the executors "to borrow money to pay any debts or pay any taxes ,if [the executors] decide the time is not right for the selling of [testator's] securities in paying [his] bequests and debts." The court did not place great emphasis on this reference to taxes and the decision rested principally on the necessary implication raised by the general testamentary scheme.

As previously noted, the present will presents a similar necessary implication of freedom of these legacies from death taxes simply by nature of the testamentary scheme. However, the presence in the Speakman will of a more express declaration regarding taxes grouped together with the direction to pay debts and funeral expenses renders the instant case much stronger than that presented in Wright Estate. The necessary implication created by the general testamentary scheme is supplementary to the express direction contained in item first. In addition, the language in item first is more emphatic and to be distinguished from the tax clause reviewed by the Su-

preme Court in the recent case of Leaver Estate, 393 Pa. 55, wherein the subject will contained a direction to the executor to sell ". . . any stock and/or bonds for the purpose of acquiring cash necessary to the settlement of taxes or other proper obligations of my Estate."

The court ruled that the language of this clause was insufficient to show an intention not to have Federal estate taxes apportioned among the various preresiduary legacies. The main thrust of this clause, however, was directed toward giving the executor the *power to sell* securities in order to pay taxes, and in this regard is similar to the clause in Wright Estate, which merely gave the executor the *power to borrow* money in order to pay taxes. The language contained in item first of the Speakman will together with the general testamentary scheme, however, distinguishes this case from Leaver Estate. Here is a direct mandate to pay taxes grouped in the same breath with an order to pay debts and funeral expenses.

Accordingly the sum of $20,000 is hereby awarded to each of the legatees named in item second and third of this will, and the sum of $5,000 is hereby awarded to each of the legatees named in item fourth of this will, all such legacies to be free and clear of any death taxes, and it is hereby ordered and decreed that The First Pennsylvania Banking and Trust Company, executor, forthwith pay the distribution herein awarded.

Counsel for accountant shall file a supplemental schedule of distribution in duplicate.

And now, July 24, 1959, this adjudication is confirmed nisi.

### Opinion Sur Exceptions

TAXIS, P. J., October 21, 1959.—Exceptions to the adjudication of this court dated July 24, 1959, have been filed on behalf of the trustees of the University of Pennsylvania and Temple University, residuary

legatees, in substance complaining that the court erred in holding that each of the legatees named in items second and third of the will were to receive $20,000 each, that the sum of $5,000 was awarded to each of the legatees named in item fourth, that all such legacies are to be free and clear of any death taxes.

I have reread the briefs of counsel in light of these exceptions and am satisfied that they present no matters not already carefully and fully discusssed and decided in the adjudication of July 24, 1959. Nothing would be gained by a reiteration of the views therein extensively discussed and decided.

Counsel for exceptants call the court's attention on page 590, of an inadvertence of the court, namely the words "They admit." Counsel for exceptants have stated to the court that no such admission was made. The words "they admit" are herewith stricken from the adjudication at page 590, and in their place are inserted the following words: "The record establishes."

And now, October 21, 1959, the exceptions are dismissed and the adjudication of July 24, 1959, as modified herein, is confirmed absolutely.