MARY A. DAKAN V. C. B. DAKAN ET AL.

No. 6391.   Decided May 22, 1935.
(83 S. W., 2d Series, 620.)

*Vickers & Campbell,* of Lubbock, *O. F. Chastain,* of Eastland, for plaintiffs in error.

On question of fixing lien against the lot of G. W. Dakan, to reimburse the community and separate estate of the wife for improvements thereon: Jackson v. Jackson, 283 S. W., 925; Welder v. Lambert, 44 S. W., 281; Allen v. Allen, 101 Texas, 362, 107 S. W., 528; Sailer v. Furche, 22 S. W. (2d) 1065; Speer's Law of Marital Rights, sec. 282.

*Conner & McRae,* of Eastland, and *G. G. Hazel,* of Sudan, for defendants in error.

On question of reimbursement: Brady v. Maddox, 124 S. W., 739; Barber v. Barber, 223 S. W., 866; Cervantes v. Cervantes, 76 S. W., 790; Maddox v. Summerlin, 92 Texas, 483, 49 S. W., 1033; Id., 50 S. W., 567.

MR. JUSTICE SHARP delivered the opinion of the court.

This suit was brought by Mary A. Dakan, surviving second wife of G. W. Dakan, deceased, against the children of G. W. Dakan by his former marriage, to establish that five described tracts of land and certain household goods were the community property of plaintiff and G. W. Dakan, and to have partition thereof in kind; or, in the alternative, sale thereof to effect a partition. In case the property should be found not community, but separate property of G. W. Dakan, it was sought to establish a charge and lien against same in favor of the community estate of plaintiff and G. W. Dakan for the value of the improvements in the sum of $15,000.00, and in favor of the separate estate of plaintiff for the value of the improvements upon Lot 7, Block A-2, in the City of Eastland, in the amount of $1750.00.

Based upon answers of the jury to special issues submitted to them, the trial court entered judgment as follows:

(1) That the community funds of Mary A., and G. W. Dakan, in the sum of $6116.70, and the separate funds of Mrs.

Dakan, in the sum of $1750.00, had gone into the improvements on Lot 7, Block A-2, in the City of Eastland; that this lot was of the value of $5000.00, and the improvements thereon of the value of $10,000.00, at the time of the trial.

(2) That $1260.00 of the community funds had gone into the improvements on Lots 34 and 36, Block B, in Eastland, known as the home place, and that $250.00 of the separate funds of Mrs. Dakan was used in the purchase and improvement of those lots; and that the present market value of the lots without the improvements was $400.00, and with the improvements is $1800.00.

(3) That $350.00 of the community funds had gone into the purchase and improvement of Lots 1 and 2, Block 36, in the town of Christoval, and that the present market value of these lots, with improvements thereon, is $350.00.

(4) That $165.00 of the community funds was used in the improvement of Lots 4 and 5, Block 63, in Stamford, and that the present market value of these lots is $200.00.

(5) That Mrs. Dakan be decreed a lien to secure her for the community and separate funds advanced, as follows: On Lot 7 for $1750.00 for separate funds, and $3058.35 for community funds; on Lots 4 and 5, Block 63, Stamford, for community funds, $82.50; and on one-half interest belonging to the other defendants in Lots 34 and 36, in Eastland, for $125.00 for separate funds. All of said sums to bear interest from the date of judgment at the rate of six per cent. per annum.

(6) The trial court found that Lots 1 and 2, in Christoval, were community property, and ordered them sold, and the proceeds therefrom be divided as follows: One-half to Mrs. Dakan, and the other half to Bertha Galloway and R. B. Dakan.

(7) The trial court found that Lots 4 and 5 were the separate property of G. W. Dakan, but made no finding in that respect with reference to Lot 7. But the evidence is undisputed that this lot was acquired and paid for during the lifetime of his first wife. Lots 34 and 36, in Eastland, and Lots 1 and 2, in Christoval, were acquired during the marriage of G. W., and Mary A. Dakan, and were community property.

It was further found that none of the real estate was susceptible of a fair, just, and equitable partition; and a lien was fixed for the various amounts above described upon the respective lots, to secure said amounts, and they were ordered sold as under execution.

It was also decreed that Lots 34 and 36, in Block B, shall constitute the homestead of Mrs. Dakan during the remainder

of her life, or so long as she may choose to continue to occupy same.

It was further found that Mrs. Dakan was not put to an election under the will of her husband, G. W. Dakan.

The case was appealed to the Court of Civil Appeals at Eastland, and that court held that Mrs. Dakan was not put to an election under the will, and further held that Lots 34 and 36 in Eastland were the separate property of Mrs. Dakan. The judgment of the trial court in ordering Lots 1 and 2 in the town of Christoval sold was upheld; but the action of the trial court in decreeing an express lien on all of the land, and ordering it sold as under execution, was reversed. 52 S. W. (2d) 1070. This Court granted a writ of error.

One of the main questions for decision in this case is whether Mrs. G. W. Dakan was put to an election under the will of her deceased husband. The trial court held as a matter of law that Mrs. Dakan did not elect to accept under the terms of the will, and therefore refused to submit the question of election to the jury. The action of the trial court on this issue is upheld by the Court of Civil Appeals.

The following additional facts appear:

G. W., and Mary A. Dakan were married in December, 1902. This was the second marriage of G. W. Dakan, his former wife having died on December 6, 1901. He left four children surviving him from his first marriage. G. W. Dakan acquired Lot 7, in Block A-2, in the City of Eastland, on the 16th day of June, 1900. Mrs. Dakan put in this property for improvements thereon, out of her separate and community funds, the amounts above mentioned. In 1918 they acquired Lots 34 and 36, in Block B, in the City of Eastland, and these lots were conveyed to both of them as grantees. The deed recites that the purchase price was $250.00,—the sum of $100.-00 cash paid and the execution of one vendor's lien note by Dakan for $150.00, with interest thereon. Nothing is said in the deed about Mrs. Dakan's paying any part of the consideration out of her separate funds, or that it should be her separate property. The jury found that $250.00 out of the separate funds of Mrs. Dakan was used in the purchase and *improvement* of these lots. These lots were decreed to be the community property of Mr. and Mrs. Dakan. At the time of their marriage, Mr. Dakan owned Lots 4 and 5 in the town of Stamford. Mr. and Mrs. Dakan owned as community property Lots 1 and 2, in Block 36, in the town of Christoval.

G. W. Dakan died June 6, 1929, and his will, dated April

29, 1929, was duly probated. The material parts of the will read as follows:

"1st. I direct that all my just debts be paid out of my estate by my executors hereinafter named by me.

"2nd. I direct that my executors hereinafter appointed by me, shall after the payment of my just debts, pay my wife, Mary A. Dakan, the sum of one hundred dollars per month and she to have the free use of the home place together with everything in or connected therewith and all of this together with said regular monthly payment as hereinbefore stated to be continued during her natural life and as long as she remains single and at her death or remarriage then and in either of said events all of said obligations shall at once cease and become null and void.

"3rd. I hereby give and bequeath Lot No. 7, Block A-2, situated in the town of Eastland, Texas, together with all improvements thereon situated, to my four children, to-wit: Bertha Galloway and R. B. Dakan, both of Dallas County, Texas, H. C. Dakan of San Antonio, Texas, and C. B. Dakan, of Eastland, Texas, in equal portions, share and share alike, but my wife, Mary A. Dakan, is to be paid out of the rentals as above stated of said brick building, and the balance of said rentals to be applied on the payment of taxes on the home place and the balance to be divided between said four children. My brick building hereinbefore mentioned is leased to the Metropolitan Chain Stores, Inc., with headquarters at New York City, N. Y., for a term of thirty years beginning January 1st, 1930, said company is to pay all taxes, insurance and upkeep of the building during the entire lease term, and pay me the average sum of $175.00 per month, and it is out of these rentals that I direct my executors hereinafter named, to have set aside for the monthly payments of my wife in the sums hereinbefore mentioned, to-wit: one hundred dollars per month, and as hereinbefore conditioned.

"4th. All the balance and remainder of all my property, whether real estate or personal property, belonging to me or in which I may have an interest, I give and bequeath it jointly to my two youngest children, to-wit: Bertha Galloway and R. B. Dakan, to be their property forever and to their heirs. I also give to R. B. Dakan my watch, typewriter, desk, etc.

"5th. If any party or parties herein mentioned shall in any way object to the probating of this will and make any kind of objections to my disposition of said property as herein

set forth, then such party so objecting is hereby entirely cut off from receiving any part of my said property.

"6th. I hereby appoint my youngest son and daughter, to-wit: R. B. Dakan and Bertha Galloway, my executor, with full power to carry this my last will into effect, and I direct that they nor either of them be required to make bond as such executor. I also direct that no action in any court be had in connection with their duties as such executors, except the filing of this will for probate and proof thereof, and returning an inventory and appraisement of property."

After the will was probated the executors took charge of the estate and filed an inventory and appraisement, in which all of the property was listed as the separate property of G. W. Dakan. Mrs. Dakan knew this was done, and made no objection thereto. She urged the probating of the will, and co-operated in carrying out its provisions. The will provided for the payment of his just debts, which amounted approximately to $2600.00. At the time of the trial there was something over $600.00 still unpaid.

Did G. W. Dakan undertake to will property not owned by him, and which required an election on the part of his wife to take under his will or renounce the will and demand her rights under the law?

In 69 C. J., §2330, pp. 1089, 1090, an election under a will is defined in the following language:

"Election is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both, the principle being that one shall not take any benficial interest under a will, and at the same time set up any right or claim of his own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the will. The principle underlying the doctrine of election is not statutory, but is purely equitable, and was originally derived from the civil law, although in some states there are statutes declaratory of, or applying, the equitable principle to particular cases. The doctrine of election is generally regarded as being founded on the intention of the testator."

1 As early as 1859 the Supreme Court of this State, in the case of Philleo v. Holliday et al., 24 Texas, 38, in discussing the doctrine of an election under a will, announced the following rule:

"The principle of election is, that he who accept a benefit

under a will, must adopt the whole contents of the instrument, so far as it concerns him; conforming to its provisions, and renouncing every right inconsistent with it; as where the wife claims something under the will which will disappoint the will."

The foregoing rule has been uniformly followed by the courts of this State. See Smith v. Butler, 85 Texas, 126, 19 S. W., 1083.

Where a will does not clearly state the intention of the testator to dispose of property not his own, the rule has been clearly expressed by Chief Justice Phillips in the case of Avery v. Johnson, 108 Texas, 294, 192 S. W., 542, in the following language:

"Where a testator owns a partial interest in land and the disposal of the land is the subject of his will, it is only where the intention to treat and devise the entire land as his own is revealed by clear and unequivocal language that the will is to be construed as the disposition of more than his own interest, putting the co-owner of the land to his election whether he will take under it because of its conferring upon him, by other provisions, some benefit from the testator's estate which, but for the will, he would not receive."

An analysis of the will clearly shows that Dakan intended to dispose of his property in the following manner:

Section 2 of the will provides that after the payment of debts the sum of $100.00 per month shall be paid his wife by his executors, and that she shall have the free use of the home place, with everything in or connected with it, and all of this, together with the monthly payment to be continued "during her natural life and as long as she remains single and at her death or remarriage then and in either of said events all of said obligations shall at once cease and become null and void."

Section 4 provides that the remainder of his property is bequeathed to his two youngest children; also that some personal property be given to R. B. Dakan.

By the terms of Section 3, Lot 7 and the improvements thereon were granted to his four children. His wife was to receive the monthly sum of $100.00 from the rentals received from the brick building, and the taxes on her home were to be paid out of the rents of the building. The executors undertook to carry out these provisions, and paid her certain sums from time to time, aggregating $855.00, and also paid the taxes on the home place.

Lot No. 7 was acquired prior to his second marriage. His second wife contributed out of her separate and community

estate certain funds for improvements thereon. The brick building thereon is leased to the Metropolitan Chain Stores, Inc., for 30 years, at a rental of $150.00 per month. Out of this rental there was to be paid as commission on the lease contract for a period of three years the monthly sum of $35.00, which would leave the net rental of the building not more than $115.00 per month. Out of this amount the sum of $100.00 is to be paid Mrs. Dakan, "and the balance of said rentals to be applied on the payment of taxes on the home place and the balance to be divided between said four children."

The testator used plain and unequivocal language when he said, "I hereby give and bequeath Lot No. 7, Block A-2, situated in the town of Eastland, Texas, together with all improvements thereon situated, to my four children." There can be no doubt that the testator intended, in the language used, to treat the lot and the improvements thereon as his own property, and clearly devised the entire property, regardless of any right or claim his wife might have therein.

2 Sections 2 and 3 plainly show that the testator intended for his wife to use and enjoy, during the time stated therein, the home place, the improvements thereon, and all furniture, free of interference from the other devises; and, furthermore, she was to be relieved of all taxes thereon, and she was also to receive a monthly payment from the rentals received from the brick building on Lot No. 7. However, under the law Mrs. Dakan could use the home place so long as she saw fit to occupy same as a homestead. This right is not an estate. Foster v. Johnson, 89 Texas, 645, 36 S. W., 67; Lee v. McFarland, 19 Texas Civ. App., 292, 46 S. W., 281 (writ denied). When the home place ceased to be used as a homestead, the interest owned therein by her deceased husband would go to the devisees described in the will.

3, 4 When the two sections are construed together it is clear that the testator was devising property belonging to both himself and wife, and as compensation to his wife for such loss was giving her the home place for her own use, free of taxes, and a monthly payment besides. It was the duty of the wife to pay the taxes on the home place during the time she occupied it as a homestead. Sargeant v. Sargeant, 118 Texas, 343, 15 S. W. (2d) 589. The benefits given the wife in the will are inconsistent with her rights allowed by law. She was, therefore, put to the election of accepting thereunder or renouncing it. It is clearly manifest that under the will she is

to receive more rental money than she would be entitled to under the law. The evidence clearly raised this question. This being true, if the wife intended to accept the benfits given under the will,—which would be inconsistent with her rights prescribed by law,—then she will be bound by the provisions of the will. An acceptance under the terms of the will definitely fixes the rights of the devisee in the property bequeathed.

5 The law does not permit the husband to devise either separate property or community property of the wife, without her consent; but if he attempts to do so, and she accepts under the will, as devisee, rights she would not otherwise be entitled to, she is estopped from questioning the disposition of her property upon the doctrine of election. Smith v. Butler, 85 Texas, 126, 19 S. W., 1083; Gilroy v. Richards, 26 Texas Civ. App., 355, 63 S. W., 666; Rogers v. Trevathan, 67 Texas, 406, 3 S. W., 569; Chance v. Gregg, 88 Texas, 552, 32 S. W., 520; Lee v. McFarland, supra; Speer's Marital Rights, §323, p. 399.

6 An election to take under a will may be shown by the person, put to an election thereunder, accepting the property given to him or her by the will. 39 C. J., §2396, p. 1120, and authorities cited. In the case of Dunn v. Vineyard, 251 S. W., 1043, (Com. App.), which involved the doctrine of election under a will, Judge German in the course of the opinion said:

"An election means that a legatee or devisee under a will is put to the choice of accepting the beneficial interest offered by the donor in lieu of some estate which he is entitled to, but which is being taken from him by the terms of the will. When by the express terms of the will the party is put to an election, he must take a choice regardless of the relative value of the two inconsistent rights. To uphold an election the compensating thing need not be of value equal to that taken away. Smith v. Butler, 85 Texas, 130, 19 S. W., 1083."

Again, in the course of the opinion, it was said:

"In the absence of statutory regulation, it may be generally said that two things are necessary in order that acts relied upon will amount to an election: First, the party must have had knowledge of his rights; that is, he must have had knowledge of the condition and extent of the estate, and of his duty to choose between the inconsistent rights; second, that he intended to elect, as shown by his words and acts, viewed in the light of all the circumstances."

7 Construing the will as a whole, Section 3 clearly manifests an intention on the part of the testator to devise Lot No. 7

and all improvements thereon to his children, subject to the payment to his wife out of the rentals derived therefrom the sum of $100.00 per month and the payment of taxes on the home place. The language used in Sections 2 and 4 does not evince a clear intention to give more than his share of the property described therein. For a general discussion of the construction of language similar in nature used in wills, we refer to the following authorities: See Avery v. Johnson, supra, and authorities cited and discussed therein; Farmer v. Zinn (Com. App.), 276 S. W., 191.

8 We think the testimony clearly raised the issue of election by Mrs. Dakan as to the property described in Section 3 of the will, and that that issue should have been submitted to the jury for determination. Mayo v. Tudor's Heirs, 74 Texas, 474, 12 S. W., 117; Dunn v. Vineyard, supra; Farmer v. Zinn, supra; Gorman v. Gause (Com. App.), 56 S. W. (2d) 855.

9 The Court of Civil Appeals held that Lots 34 and 36 were the separate property of Mrs. Dakan. The deed recites that these lots were conveyed to both Mr. and Mrs. Dakan as grantees, and expresses the consideration above stated. This carries with it the presumption that it was community property. Speer's Marital Rights, §350, pp. 425, 426, and decisions cited. In answer to a special issue submitted, the jury found that $250.00 out of the separate funds of Mrs. Dakan was used in the purchase and *improvement* of these lots. Based upon this finding, the trial court correctly entered judgment that these lots were the community property of Mrs. Dakan and her deceased husband. Under the state of this record it can not be held as a matter of law that these lots were the separate property of Mrs. Dakan. Art. 4619, Vernon's Ann. Texas Statutes, amended by the Acts of the 40th Legislature, (1927), p. 219, ch. 148; Foster v. Christensen (Com. App.), 67 S. W. (2d) 249, and authorities cited; Allen v. Allen, 101 Texas, 362, 107 S. W., 528; Hayworth v. Williams, 102 Texas, 308, 116 S. W., 43, 132 Am. St. Rep., 879; Solether et al. v. Trinity Fire Ins. Co., 124 Texas, 363, 78 S. W. (2d) 180.

Another important question presented here for decision is whether or not the court had the power to enter a judgment fixing an express lien on the separate and community property, as was done, and directing that said property be sold to satisfy said amounts as under execution.

The exact question presented in this case has never heretofore so pointedly arisen. The cases recognizing the general

right of reimbursement between estates will disclose that the right of the estate claiming and entitled to reimbursement is not a fixed right or title in the property sought to be charged, but is an equity. What is that equity, and how and when is it to be enforced? These are the questions presented here for decision. We admit that they are not free of difficulty. The decisions have correctly classified the right of the one making such advancement as an equity, and the final determination of the rights of the respective parties is to be determined upon equitable principles as to the amount of reimbursement, as well as the means of enforcing the same. It is not a mere question of balancing ledger accounts.

10 There is nothing definite in this record to show that funds belonging to Mrs. Dakan were used to pay off any debt secured by a valid and subsisting lien against this property. Neither is it shown that Dakan undertook, in writing or otherwise, to fix a lien on the lots to secure his wife for either community or separate funds spent for improvements placed thereon. With the exception of Lots 34 and 36 in Eastland and Lots 1 and 2, in Block 36, in Christoval, the other property was acquired by Dakan prior to his second marriage. This being true, and the title having vested in him, and the land paid for, the fact that she contributed both separate and community funds, or either, for improvements placed thereon, cannot affect the title to the land. Allen v. Allen, supra; Hayworth v. Williams, supra; Furrh v. Winston, 66 Texas, 524, 1 S. W., 527; Speer's Law of Marital Rights (1929), § §388, 389, and 390. It is, however, the rule in this State "that the community estate passes charged with the debts against it." Art. 2579, Vernon's Ann. Texas Statutes.

Article 3314 in part reads:

"When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject, however, to the payment of the debts of the testator or intestate; except such as may be exempted by law; and, whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law, but with the exceptions aforesaid shall still be liable and subject in their hands to the payment of the debts of the intestate."

11, 12 Our decisions hold that where a spouse improves his or her separate property with the funds belonging to the

community estate, the other spouse, or his or her heirs, would be entitled to reimbursement out of his or her separate property, to the extent of their share of the community funds so used, and that their claim for such reimbursement is in the nature of a charge upon the property so improved. Rice v. Rice, 21 Texas, 58; Cameron v. Fay, 55 Texas, 61; Roberson v. McIlhenny, 59 Texas, 615; Furrh v. Winston, 66 Texas, 525, 1 S. W., 527; Clift v. Clift, 72 Texas, 149, 10 S. W., 338; Robinson v. Moore, 20 S. W., 994. In other words, the principles of reimbursement in accounting between estates apply, without distinction, to both separate and community estates. 23 Tex. Jur., §158, pp. 187, 188, 189, 190. In this case there arises the necessity for an accounting between the estate of G. W. Dakan acquired during a prior marriage, and the community and separate estate of his second marriage. The relation of the parties in such a case is held to be that of tenants in common, and the well settled rules governing that relation will mainly apply. 23 Tex. Jur., §159, pp. 190, 191. Homestead rights are exempt from this rule. 11 Tex. Jur., §12, p. 419.

13  The community rights of a spouse growing out of a marriage can only affect the individual interest of the other spouse growing out of a preceding marriage. The rights of children by the preceding marriage cannot be affected by the rights of either party arising out of the second marriage. 23 Tex. Jur., §159, p. 190.

Let us look at the judgment of the trial court. The court impressed Lots 34 and 36, in Block B, in the City of Eastland, as a homestead for Mrs. Dakan, and also decreed that she have a lien against the one-half interest held by the defendants therein, and that said property be sold as under execution.

14  Our courts are liberal in upholding the doctrine of reimbursement in the settlement of estates. The rigid rules relating to cotenants are frequently relaxed. Clift v. Clift, supra. No inflexible rule can be announced. We find, however, no principle of law which sanctions the rule that where a piece of property is impressed for homestead purposes for either husband or wife, at the same time an express lien may be fixed on the interests of others therein to secure advancements made by either husband or wife, as was done in this case, under the facts disclosed here, and order the interest of others in the property sold as under execution. See Barber v. Barber, 223 S. W., 866; Maddox v. Summerlin, 92 Texas, 483, 49 S. W., 1033, 50 S. W., 567; Inge v. Cain, 65 Texas, 75; Moore v.

Chamberlain, 109 Texas, 64, 195 S. W., 1135; Kearby v. Cox (Com. App.), 211 S. W., 932.

15 The rule is announced that in adjusting the respective rights of the parties the equities shall be balanced. It is no equity to permit the surviving spouse to impress certain property bought and improved principally by community funds as a homestead, to be used during his or her lifetime, being the direct beneficiary of such improvement, to demand repayment in full of the exact amount advanced, together with interest thereon,—and to be enforced by the foreclosure of a lien upon such property, perhaps to the complete sacrifice of the interest held by other heirs or devisees therein.

The trial court fixed a lien on Lot 7 to secure Mrs. Dakan for the amounts spent thereon, and also ordered same sold as under execution. Of course if Mrs. Dakan accepted under the will, she waived all claims for reimbursement for improvements placed on this lot. However, if it should be determined to the contrary, she would not be entitled to the lien fixed against the lot, as was done. Independently of the will, under the law the children of the former marriage were entitled to a certain interest therein. Certainly these rights could not be affected by fixing a lien upon their interests to secure Mrs. Dakan for the funds advanced by her. A lien also was fixed against Lots 4 and 5, in Block 63, in Stamford, to secure Mrs. Dakan for her share of community funds spent for improvements thereon, and directed that the property be sold as under execution.

16 The following rules relating to the adjustment of equities between respective parties in the settlement of estates are settled by the decisions:

1. The charge or equity for improvements placed on land is not a right, title, or interest in the land as such. Curtis v. Poland, 66 Texas, 511, 2 S. W., 39; Schmidt v. Huppman, 73 Texas, 112, 11 S. W., 175; Hayworth v. Williams, supra.

2. "In ascertaining and satisfying the equities of the parties, the court will secure to either, out of the common estate, satisfaction for money found due him by his cotenant on an accounting. Moore v. Moore, 89 Texas, 33, 33 S. W., 217. But this is only done as an incident of the proceeding to justly and equally distribute the property in accordance with the respective rights to which the parties are found entitled. It follows that an order for the sale of this property can only be justified

as a necessary incident to a full and final partition." Kalteyer v. Wipff, 92 Texas, 673, 52 S. W., 63.

3. Where funds belonging to one spouse are used for placing permanent improvements upon the separate property of the other spouse, such improvements become "attached to the soil, and cannot in the nature of things be divisible in specie, when one of the joint owners has no interest in the land upon which they have been erected. Hence results the rule that the community estate must be reimbursed for the cost of the buildings erected, by joint labors or funds upon the separate property of one of the spouses, and, in effect, this vests the improvement in that spouse and entitled the other to one-half of the cost." Furrh v. Winston, 66 Texas, 521, 1 S. W., 527.

4. In allowing a reimbursement for funds spent, if any portion of the purchase money for said land can be shown to have been paid with separate funds of Mrs. Dakan, and with community funds of plaintiff and G. W. Dakan, Mrs. Dakan will be entitled to reimbursement for the amount of her separate funds and her share of the community funds so paid; and in case of reimbursement for improvements, the amount of recovery is limited to the amount of enhancement of the property at the time of partition by virtue of the improvements placed thereon. Clift v. Clift, supra; Hillen v. Williams, 25 Texas Civ. App., 268, 60 S. W., 997; Lynch v. Lynch, 130 S. W., 461 (writ refused); Branch v. Makeig, 9 Texas Civ. App., 399, 28 S. W., 1050; 31 C. J., 222; 32 Tex. Jur., §27, p. 174.

17 It is not the policy of the law to bestow a right without furnishing a remedy for its enforcement. Since equitable suits for the adjustment of rights and for partition may be maintained, and "the judgment must give to the parties all the relief to which they may be entitled either in law or equity, if a sale of the property is found essential to a complete enforcement of the rights established, we think there can be no doubt that it is competent for the court to adjudge it." After announcing that it was not intended to lay down an inflexible rule applicable to all cases, the court further said: "Even then the court must make the ultimate decision as to the propriety of a sale. This is entirely consistent with the proposition that the court, in equitable suits for partition, may, when the necessities of the case can not be otherwise met, order a sale in the first instance, without going through the idle form of trying to have made, through commissioners, a division which plainly can not be made. The powers of the court are ample to make such

order as is necessary to settle and adjust all rights involved, and, if this requires a sale, to provide for it." Kalteyer v. Wipff, 92 Texas, 673, 52 S. W., 63.

The District Court has the power to determine and adjust the rights of the parties in this suit, and may justly treat this as an equitable partition proceeding. In making such partition, all of the property in which the parties are jointly interested should be dealt with as a whole, and partition made, as far as possible, in kind,—giving due recognition to the homestead rights. In case a complete partition in kind cannot be had, so as to award each party his or her equitable portion, the court can, if necessary, award certain property to one or more of the interested parties, impressing it with a money charge in favor of another,—which charge may be ordered enforced by sale, if not satisfied by payment of the money within a fixed period of time. It may be found that Mrs. Dakan can be awarded specific property in fee,—such, for instance, as the homestead property; and her claim to reimbursement for advancements may in this way be adjusted without sale. Or, if necessary, the court may sell a part, or all, of the interest of G. W. Dakan in the property involved,—except in Lots 34 and 36, Block B, in Eastland, designated as the homestead of Mrs. Dakan,—to satisfy the legal demands of Mrs. Dakan. The equities of the parties may be adjusted without the sale of the interest of defendants in Lots 34 and 36 while impressed as a homestead for Mrs. Dakan. The necessities of this case do not demand such action.

The judgment of the Court of Civil Appeals reversing and remanding this cause is affirmed, and the cause is reversed and remanded to the trial court for further proceedings in accordance with this opinion.

Opinion delivered May 22, 1935.