## CLAYMAN et al. v. LINDSAY.
### No. 12317.

Court of Civil Appeals of Galveston.

Nov. 15, 1951.

Rehearing Denied March 27, 1952.

Walter F. Brown and H. Fletcher Brown, of Houston, for appellant.

Elledge, Elledge, Urban & Elledge and Vernon Elledge, all of Houston, for appellee.

CODY, Justice.

This was a formal action in trespass-to-try-title, which. was coupled with various alternative pleas, brought by appellee, E. W. Lindsay, against Emilie King Clayman and husband, appellants, involving two lots in the City of Houston know as 2505 Beatty Street. The appellants disclaimed except as to an undivided one-half interest in the property subject to the home-stead rights of appellee.

The statement of the nature and result of the case can be simplified by noting at the outset certain of the undisputed facts. Appellee was the surviving husband of Frances M. Lindsay and had been married to her for more than forty years when she died testate on April 17, 1947. He duly qualified as independent executor of his deceased wife's will. Mrs. Lindsay left no child nor descendants of any child surviving her. Mrs. Clayman was an heir at law of the deceased Mrs. Lindsay and related to Mrs. Lindsay as a niece.

It was further undisputed that the property in question was the subject of a written contract of sale dated February 14, 1939, between the Houston Land & Trust Company, on the one part, and Mrs. Lindsay and appellee, on the other part, which contract, among other things, provided:

"That for and in consideration of the sum of Nine Hundred Fifty and No/100 Dollars ($950.00), to be paid by Mrs. Frances M. Lindsay out of her own separate funds to Party of the First Part, as hereinafter stipulated, said Party of the First Part hereby agrees to sell to Mrs. Frances M. Lindsay, as her separate property and for her own separate use and estate, all that certain real estate lying and being situated in Harris County, Texas, known and described as Lots Nos. One (1) and Two (2), Block No. Six (6), in Brookline Addition to the city of Houston.

"The payment for said property is to be made by Mrs. Frances M. Lindsay to said Party of the First Part in the following manner:

"The sum of Fifty and No/100 Dollars ($50.00), in cash by the said Mrs. Frances M. Lindsay out of her own separate funds, the receipt of which is hereby acknowledged, and the balance of Nine Hundred and No/100 Dollars ($900.00) * * *".

The foregoing contract showed on its face the installment payments were made which paid it out on February 19, 1945. Then, on March 15, 1945, the Houston Bank & Trust Company, formerly known as the Houston Land & Trust Company, executed a deed, filed for record March 19, 1945, which was regular in all respects, and which contains the following: " * * * for and in consideration of the sum of Nine Hundred Fifty Dollars ($950.00) cash to it paid by Mrs. Frances M. Lindsay, out of her own separate funds, the receipt of all of which is hereby acknowledged, has Granted, Sold and Conveyed, and by these presents does Grant, Sell and Convey unto the said Mrs. Frances M. Lindsay, as her separate property and for her own separate use and estate, of Birmingham, Alabama, all that certain real estate lying and being situated in Harris County, Texas, known and described as follows: * * *."

The gist of the alternative pleas which appellee joined to the formal trespass to try title action, so far as we here notice them, were, in substance: (1) that notwithstanding the recitation of the contract and deed, the funds used in making the payments provided in the contract and deed, were community property of appellee and Mrs. Lindsay, now deceased; (2) also that it was orally understood between appellee and Mrs. Lindsay that, notwithstanding recitals of the contract and deed, the payments that were thereunder made were made out of community funds (there being no other funds), and that pursuant to said agreement the property was taken in the name of Mrs. Lindsay as her separate estate, but was taken to be held as trustee for the community estate of the parties; (3) that in any event if the lots in question were the separate property of Mrs. Lindsay as a matter of law, nevertheless she left a last will and testament which was duly probated and it was the intention expressed by her in her said will, albeit ambiguously expressed, that all of her property not expressly otherwise devised should pass to, vest in and become the property of appellee, so that if said two lots were her separate property they did vest in appellee by virtue of Mrs. Lindsay's last will and testament; (4) that all sums used in making of payments under the contract and deed were community property as were all payments made for the erection and construction of the improvements made thereon and appellee was entitled to have a lien established against said two lots, should they be held to be the separate property of Mrs. Lindsay, to secure the payment of such community funds.

At the conclusion of the evidence appellants moved for a directed verdict, which motion was refused and all issues made by appellee's pleadings were submitted to the jury. The jury answered all issues so submitted to them in favor of appellee. Appellant seasonably moved for judgment notwithstanding the verdict, which motion was refused. The court rendered judgment for appellee, based upon the jury's answers to said special issues, for title and possession of the two lots in question.

■ Appellants have not complied with paragraph "b" of Rule 418, Texas Rules of Civil Procedure, which directs the points to be so stated that they will occupy a single page of the brief, but we construe appellants' first grouping of the errors complained of as constituting their first point and as so construed said point complains of the court rendering judgment for title and possession of the lots in question, based upon the verdict, because the consideration specified in the contract and the deed was contractual in nature and as a matter of law under said contract and deed the two lots vested in Mrs. Lindsay as her separate property and estate. We are constrained to sustain this contention of appellants.

■ Recitations in the contract between Mrs. Lindsay and appellee on the one part and the Houston Land & Trust Company on the other part that Mrs. Lindsay paid the initial payment out of her separate property and would pay the balance of the $950 out of her separate property were patently contractual in nature. The same applies to the deed from the Houston Bank & Trust Company, successor to the Houston Land & Trust Company, to Mrs. Lindsay. Parol evidence could not be introduced to contradict or vary the contractual consideration so recited, the legal effect of which was to make the two lots the separate property of Mrs. Lindsay. Kidd v. Young, 144 Tex. 322, 325, 190 S.W. 2d 65; Bradshaw v. McDonald, 147 Tex. 455, 216 S.W.2d 972. Said parol evidence rule applies as well to any attempt to impose on the grantee in a deed a parol trust in respect to the property conveyed. Id. See also Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825. In the last cited case it was stated that the rule was based on estoppel. Whatever may be the basis of the rule, it is a rule of substantive law and not one of evidence.

We will add that the parol evidence which was adduced by appellee was convincing and ample to support the findings of the jury. However, the legal effect of the contract and deed was to constitute the two lots the separate propery of Mrs. Lind-

say and the Court, in our opinion, should so have found, as a matter of law.

We sustain what we construe to be appellants' second point, which consists of their second grouping of points. In substance this point complains that the will, as a matter of law, failed to express any intention that the property devised by said will should go to appellee. We are constrained to sustain this point.

Appellee plead that the intention was expressed in paragraph II of Mrs. Lindsay's will to devise all of her property, with specified exceptions not material to state, to appellee.

▇▇▇ Said paragraph II of the will read: "I hereby appoint Mr. Ernest Walden Lindsay, my beloved husband, Independent Administrator, without bond, and shall be independent of the Court, of all my property, Real, Personal and Mixed." Obviously the will was drafted by a layman. Appellee's evidence shows that said layman had never before undertaken to draft a will; that he was requested by Mr. Lindsay to go to the hospital where his wife was critically ill and draw a will. The evidence further shows that Mrs. Lindsay instructed said layman to draft the will so as to leave the bequests of $2,000, concerning which there is no dispute; and so as to leave all of the rest of her property to appellee, her husband. The evidence further shows that the layman went back to his office, which was at one of the Houston newspapers, and prepared the will and returned, and when he read paragraph II of the will to Mrs. Lindsay he told her that the effect of this was to give all of her property except the specific bequests aforesaid to her husband, Mr. Lindsay, and that Mrs. Lindsay said that was what she wanted and executed the will, in compliance with the requirements of the statute. In response to a special issue the jury found that paragraph II of the will expressed the intention of Mrs. Lindsay to give all of her property except the aforesaid specific bequests to her husband. It is true that the language is awkward but the only intention which can be derived therefrom is the intention, not to make a residuary legatee out of appellee but, to make him the independent executor, without bond, of Mrs. Lindsay's will. The omission of a will to express an intention of the testator cannot be supplied by parol. This is too fundamental to require any citation of authorities.

The court correctly held that Miss Jeanette Ball was qualified to testify from family history and tradition as to the relatives who survived Mrs. Lindsay. From her evidence it appeared that Mary Emily Clarke Ball was a half-sister of Mrs. Lindsay who survived, and who thereafter died, prior to the trial, and testified further as to her survivors. From her evidence it follows that the undivided half of Mrs. Lindsay's property which did not vest in her surviving husband, vested two-thirds in appellant Mrs. Clayman, and one-third in Mary Emily Clarke Ball. The evidence shows that the heirs of Mary Emily Clarke Ball quitclaimed to appellee. The judgment of the court should have awarded an undivided two-thirds interest in the lots to appellee, and the remaining undivided one-third to Mrs. Clayman, subject to appellee's homestead rights.

▇▇▇ From the findings of the jury, and said findings were adequately supported by the evidence, the improvements on the lots were paid for by community funds. The community is entitled to be repaid the cost of the improvements, which amounted to $5,495, and to have a lien established on the property. Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620. But appellee or his heirs are not entitled to have the lien foreclosed so long as appellee's homestead rights therein remain in force.

The judgment is, accordingly, except as here in part reversed and rendered, otherwise affirmed.

### On Motions for Rehearing

▇▇▇ The motions of the parties for rehearing are granted to the extent only that the judgment heretofore rendered by this Court is modified so as to provide that appellee shall recover an undivided two-thirds interest in the lots in question, and appellant, Mrs. Clayman, shall recover the remaining one-third interest in said lots, sub-

ject to appellee's homestead rights. Otherwise said motions for rehearing are overruled.

In our original opinion, we misconceived the force of the holding in Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620. It was held in that case, 125 Tex. 319, 320, 83 S.W.2d 620, 628, that a charge for improvements placed on land is done only as an incident of the proceeding to justify and equally distribute the property in accordance with the respective rights to which the parties are found entitled. Said the court in the cited case: "'Hence results the rule that the community estate must be reimbursed for the cost of the buildings erected by joint labors or funds upon the separate property of one of the spouses, and, in effect, this vests the improvement in that spouse, and entitled the other to one-half of the cost.'" The evidence in this case warranted the jury in making findings which would support the judgment that the funds deposited in banks in the name of either Mr. or Mrs. Lindsay, and securities in either of their names, were community property. The evidence showed that at the time of Mrs. Lindsay's death there was personal community property consisting of bank deposits and securities of not less than $12,447.57, and additional personal property not necessary to specify. The evidence, as was stated in our original opinion, supported the jury's finding that the improvements on the lots were paid for by community funds in the sum of $5,495. Therefore, in adjusting the equities between the community estate of Mr. and Mrs. Lindsay, and the separate estate of Mrs. Lindsay, and in order to see what community funds are available for distribution under the facts of this case, we must apply the aforesaid sum of $12,447.57 to the satisfaction of the community's claim against the lots. After such application, there remains at least $6,952.57 for distribution among those entitled thereto. The deceased wife's half of this was more than $3,400. Said sum was more than ample to satisfy her bequests totaling $2,000.

The inadvertent errors in the original opinion, which, incidentally, had no bearing upon the decision, have been corrected.

Motions for rehearing are granted in part and refused in part, and this Court's judgment modified as directed by this opinion.