736 S.W.2d 775 (1987)
Nancy Marie CARTER, Appellant,
v.
Donald H. CARTER, Jr., Appellee.
No. B14-86-278-CV.
Court of Appeals of Texas, Houston (14th Dist.).
June 25, 1987.
Rehearing Denied August 6, 1987.
*777 Hillord H. Hinson, Houston, for appellant.
John C. Pavlos and Susan E. Crowley, Houston, for appellee.
ROBERTSON, SEARS and CANNON, JJ.

OPINION
SEARS, Justice.
Nancy Marie Carter (appellant) appeals from a division of property in a divorce decree. At issue is the characterization of certain stocks and bonds and a house in Montgomery County, Texas, which were awarded to Donald H. Carter, Jr. (appellee) as his separate property. At appellant's request, the trial court filed Findings of Fact and Conclusions of Law. Appellant did not file any objections to these findings nor did she request any additional findings. In eight points of error appellant alleges the trial court abused its discretion in characterizing the stocks and the house as separate property or in failing to impose a constructive trust on the house. We affirm.
Initially, we observe that where a court's findings of facts are unchallenged, these facts will constitute undisputed facts that are binding on all the parties. Further, these findings will be sustained if there is any evidence in the record to support them. James Holmes Enterprises, Inc. v. John Bankston Construction & Equipment Rental, Inc., 664 S.W.2d 832, 834 (Tex.App.Beaumont 1983, writ ref'd n.r.e.). In addition, we note that appellant's points of error, both in her Motion for New Trial and her appellate brief, do not complain of the sufficiency of the evidence to support the trial court's findings but instead attack that court's characterization of the property as an abuse of discretion. Unless a trial court's findings of fact are challenged by point of error on appeal, they are binding on the appellate court. Katz v. Rodriguez, 563 S.W.2d 627, 631 (Tex.Civ.App.Corpus Christi 1977, writ ref'd n.r.e.). We will, however, address all issues as the results will be the same.
In her first two points of error appellant argues that the trial court abused its discretion by characterizing seventeen blocks of stock as separate property. She alleges there was insufficient evidence to show the stock was purchased with separate funds and that appellee failed to trace the original separate property into those stocks by clear and convincing evidence.
Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. Tex. Fam.Code Ann. § 5.02 (Vernon 1975). To overcome that presumption, a spouse asserting separate ownership must clearly trace the original separate property into the particular assets on hand during the marriage. Cockerham v. Cockerham, 527 S.W.2d 162, 167 (Tex.1975).
The parties were married on December 7, 1974. Appellee testified that in April 1970 his father made a gift to him of 159 shares of Milk Proteins, Inc. (MPI) stock. MPI appears to have been a small, family-owned company that also employed appellee. In 1976, Stauffer Chemical Company bought MPI, employed appellee and converted his 159 shares of MPI stock into 4,645 shares of Stauffer stock. Appellee testified that in 1979 Stauffer had a two-for-one stock split, which doubled his shares to 9,290.
In January and April of 1981, appellee sold 1,156 and 1,000 shares of Stauffer stock, and, in 1982, he sold an additional 1,000 shares. The proceeds from those three sales went into community assets to pay community debts and living expenses. Appellee also traded in Stauffer stock apart from the converted shares, acquiring *778 166 shares as a Christmas gift from his father in 1981 and participating in six short sales in 1982 and 1983. The 166 shares were sold on June 13, 1984, and one-half of the proceeds went to appellant.
After he retired from Stauffer, appellee went to work for a securities firm. When he obtained his broker's license, appellee opened a margin account at the firm in his name only. He bought and sold stock on credit through that account, using his remaining Stauffer stock (some 6,134 shares) as collateral for the debt created within the account. On February 22, 1985, appellee sold 500 Stauffer shares to reduce the debt in his margin account. Shortly thereafter, he tendered 900 shares and then an additional 4,700 shares to Chesebrough-Pond's Inc. He accounted for all except thirty-four of the original 9,290 shares. Appellee used most of the $156,800 he received for the tender to pay off the debt within his separate margin account, to buy additional stock listed on his inventory (which he kept in his separate account) and to buy a van.
The trial court made the following findings of fact and conclusions of law pertaining to the stock:

FINDINGS OF FACT
12. The following assets were acquired by DONALD H. CARTER, JR. prior to his marriage to NANCY MARIE CARTER:
. . . . .
(i) 159 shares of the common stock of Milk Proteins Inc.
. . . . .
14. Following the marriage of DONALD H. CARTER, JR. and NANCY MARIE CARTER, the 159 shares of Milk Proteins Inc. stock was exchanged for 4,645 shares of Stauffer Chemical Company stock.
15. The following assets were acquired subsequent to the date of marriage of DONALD H. CARTER, JR. and NANCY MARIE CARTER, with funds acquired by DONALD H. CARTER, JR. as a result of the sale of shares of Stauffer Chemical Company stock which Stauffer stock was acquired in exchange for 159 shares of Milk Proteins Inc. stock:
[listed are shares in sixteen companies, $20,000 of Harris County Tax Free Bonds and a 1985 Chevrolet van].

CONCLUSIONS OF LAW
7. The 159 shares of Milk Proteins Inc. stock was the separate property of DONALD H. CARTER, JR.
. . . . .
9. The following assets are the separate property of DONALD H. CARTER, JR.:
[listed are shares in sixteen companies, $20,000 of Harris County Tax Free Bonds and a 1985 Chevrolet van].
Appellee testified at length about the 159 shares of MPI stock and its subsequent metamorphosis. A 1974 income tax return was offered into evidence to show that dividends on the stock were reported for that year. Appellee testified that MPI dividends generally were declared at the end of the year and then dated the following year. This testimony lends credence to his claim of ownership of the stock in 1973 (and thus prior to the December 7, 1974, marriage). The parties' tax returns for the years 1975 through 1983 were also placed in evidence to reflect the trading that occured in the Stauffer stock. Finally, on both the 1976 and 1977 tax returns, the notation (H) appears beside the Stauffer Chemical Company dividends reported on Schedule B. Schedule B instructs one to write (H), (W) or (J) to denote stock held separately by the husband or wife, or stock held jointly.
Appellant offered no evidence to refute appellee's testimony concerning the acquisition of the MPI stock. She merely concluded the shares "could have been acquired during the marriage." She argues, however, that appellee did not meet his tracing burden with clear and convincing evidence and that the uncorroborated testimony of an interested witness is not conclusive.
In Texas there are but two standards by which evidence is reviewed: factual *779 sufficiency and legal sufficiency. The requirement of clear and convincing evidence is merely another method of stating that a cause of action must be supported by factually sufficient evidence. Meadows v. Green, 524 S.W.2d 509, 510 (Tex.1975). See also Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206, 209 (1950); Newland v. Newland, 529 S.W.2d 105, 108 (Tex.Civ. App.Fort Worth 1975, writ dism'd w.o.j.). We hold that the evidence was factually sufficient to support the trial court's characterization of the stock as separate property. We find further that most of appellee's testimony is corroborated. We must recognize that in a case of this nature there is rarely a third person to corroborate material agreements between spouses or actions by one spouse without the participation of the other. In these instances we must rely upon the fact finder to make findings based upon his belief or disbelief of the testimony before him. Newland, 529 S.W.2d at 108. Points of error one and two are overruled.
Points of error three through eight concern the characterization of the parties' home. Once again, we begin our inquiry with the presumption that property possessed by either spouse during or on dissolution of marriage is community property. A spouse claiming separate ownership must overcome this presumption by clear and convincing evidence.
Appellee testified that on October 29, 1974, he signed an earnest money contract on the Montgomery County house and secured it with a $1,000 check written on his separate account. This was prior to the December 7, 1974, marriage. The closing took place on January 15, 1975, and both parties signed the note and deed of trust. Appellee further testified that the down payment at closing was also paid out of his separate account.
The trial court found the following:
13. The earnest money contract providing for the purchase of Lot 91 of Hiwon, Section 1, Panorama Village, a subdivision in Montgomery County, Texas with DONALD H. CARTER, JR., individually, as purchaser, was signed prior to the date of his marriage to NANCY MARIE CARTER and the $1,000 of earnest money was paid prior to his marriage to NANCY MARIE CARTER.
The court then found that the lot was appellee's separate property and awarded appellant reimbursement of $30,000 for her share of funds expended by the community estate for improvement of the lot.
Ownership of real property is governed by the rule that "the character of title to property as separate or community depends upon the existence or nonexistence of the marriage at the time of the incipiency of the right in virtue of which the title is finally extended, and that the title, when extended, relates back to that time." Creamer v. Briscoe, 101 Tex. 490, 109 S.W. 911, 912 (1908). Appellee acquired a right to title to the property when he entered into the earnest money contract. Wierzchula v. Wierzchula, 623 S.W.2d 730, 732 (Tex.Civ.App.Houston [1st Dist.] 1981, no writ). As the date of execution of the earnest money contract was prior to the marriage, appellee's right to title preceded the marriage and the separate character of the property was thereby established.
In point of error four appellant claims that there was insufficient "clear and convincing" evidence that appellee had acquired the right to title in the property prior to the marriage. Appellant bases her argument on the fact that the earnest money contract was not admitted into evidence and on the lack of evidence in the record to indicate when the contract was accepted by the seller. The unchallenged trial court finding was that the contract was signed prior to the marriage. The date of acceptance by the seller is not relevant.
Although the earnest money contract was not in evidence, appellee put into evidence, without objection, a check for $1,000, dated October 19, 1974 (the alleged date the contract was signed) made out to Eagle Title Company. The check appears to have been cashed on November 7, 1974, one month prior to the marriage. This evidence was corroborated by appellant, who testified that she thought the earnest money contract was signed in October and *780 that she was not a party to its execution. Point of error four is overruled.
In point of error seven appellant argues that the deed is the best evidence of title to real property. She contends that the earnest money contract merged into the deed; therefore, the right to acquire the property ripened after the marriage. Appellant cites Duke v. Duke, for this proposition. 605 S.W.2d 408, 410 (Tex.Civ.App.El Paso 1980, writ dism'd w.o.j.). However, though the earnest money contract in Duke had been entered into prior to marriage, it provided that the property would be conveyed to "James H. Duke and wife, Barbara J. Duke." This is but an illustration of the rule that in the absence of fraud, accident or mistake, all prior agreements entered into between the parties are considered merged in the deed. Commercial Bank, Unincorporated, of Mason, Texas v. Satterwhite, 413 S.W.2d 905, 909 (Tex. 1967). In this case, there is no evidence that both spouses were named in the earnest money contract. Therefore, Duke is not applicable and point of error seven is overruled.
Appellant's points of error three, five and six concern several presumptions that she argues affect the separate property characterization of Lot 91. In point of error three appellant asserts that the trial court abused its discretion in characterizing the property as appellee's separate property because where a deed to real property is made to both spouses, a presumption is raised that the spouses agreed the property would be community.
The cases cited by appellant in support of this presumption both involve properties acquired after marriage.[1] The separate or community nature of property is determined by the time and circumstances of its acquisition. Ray v. United States, 385 F.Supp. 372, 377 (S.D.Tex.1974), aff'd, 538 F.2d 1228 (5th Cir.1976); Lindsay v. dayman, 151 Tex. 593, 254 S.W.2d 777, 780 (1952). The trial court characterized Lot 91 as appellee's separate property because the parties were not married at the time the property was acquired and because appellee alone signed the earnest money contract and paid the earnest money. Where there is no evidence of gift, the fact that the deed is in both names does not change the character of the property.
Appellant applies this same reasoning to point of error six regarding insufficient evidence to rebut the presumption that Lot 91 is community because it was purchased with community credit. Appellant contends that as a result of the note being signed after the marriage, there arises a presumption that the property is community because a debt acquired by either spouse during marriage is presumptively a community debt.
In support of her argument appellant cites Wierzchula, 623 S.W.2d at 732, which in turn cited Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881 (1937). Gleich involved property purchased during marriage partly with separate funds of the husband and partly on the credit of the community. The Gleich court stated, "Money borrowed on a community obligation is community property. Similarly, property acquired on the credit of the community is community property." 99 S.W.2d at 883. Wierzchula did concern a situation very similar to the one before us in that an earnest money contract was signed in the husband's name prior to marriage with the earnest money paid from his separate funds. However, once an earnest money contract is signed and the separate property character attaches, it is immaterial that a community debt may exist or that part of the unpaid purchase price is thereafter paid from community funds. The community estate is only entitled to reimbursement from the separate estate for community funds expended on the separate property. Appellant received such reimbursement. Points of error three and six are thus overruled.
In point of error five appellant argues that there was insufficient evidence to *781 rebut the presumption that because the deed was in both parties' names appellee made a gift or advancement of one-half interest in the property to her. When a spouse uses separate property consideration to pay for land acquired during the marriage, and takes title to the land in the name of both husband and wife, it is presumed that the spouse intended the interest placed in the other to be a gift. Cockerham, 527 S.W.2d at 168. However, this presumption is rebuttable, and parol evidence is admissible to show that a gift was not intended. Peterson v. Peterson, 595 S.W.2d 889, 892 (Tex.Civ.App.Austin 1980, writ dism'd w.o.j.).
Appellee testified that he did not intend to make a gift of one-half interest in Lot 91 to appellant. He testified that he did not request that both names be placed on the note and deed of trust. He merely accepted and signed the papers prepared by the savings and loan company. The parties had recently moved to Texas from Michigan and were unfamiliar with Texas community property laws. In addition, appellant offered no evidence that a gift was intended. In finding that Lot 91 was appellee's separate property, the trial court impliedly found that appellee made no gift to appellant. We find no evidence of gift and any such presumption is rebutted by the evidence. Therefore, point of error five is overruled.
The central issue in the division of property is whether the court divided the property in a just and right manner as required by Tex.Fam.Code Ann. § 3.63(a) (Vernon Supp.1987). Lettieri v. Lettieri, 654 S.W.2d 554, 557 (Tex.App.Fort Worth 1983, writ dism'd w.o.j.). The trial court found that, regardless of the characterization of any of the property, the division of the property was just and right. We agree.
No value was assessed the property in the divorce decree nor did the court make findings of fact concerning its value. None appear to have been requested. In Petitioner's Exhibit No. 5, however, appellant assigns a fair market value of $150,000 to Lot 91 and part of Lot 90. (Lot 90 was purchased and then part of it sold). Appellant estimates the equity in the property to be approximately $102,193 ($150,000 minus a $47,807 balance on a home improvement loan). In the divorce decree, appellant was awarded, among other items, $30,000 as reimbursement for community funds expended for the improvement of the property, as well as a $7,500 lien on Lot 90. If the latter represents her share of Lot 90, and Lot 90 was community property, then her share of the estimated equity is $37,500.
The parties separated on or about July 15, 1983, and the decree was entered on January 22, 1986. For the two and one-half years preceding the divorce, appellee remained in the house and paid all costs associated with the property, i.e., mortgage, taxes, upkeep and improvements. Thus, appellee has contributed a larger share of the equity, and the trial court made an equitable distribution reflecting that contribution. Also, the decree makes appellee responsible for the remaining indebtedness associated with the property. Reviewing the division of property as a whole, we do not find it to be manifestly unjust.
Finally, appellant argues that the trial court abused its discretion by failing to impose a constructive trust on Lot 91 because the evidence clearly shows that if the property is not community property, then the husband defrauded the wife and breached his fiduciary duty to her. Appellant did not raise the issue of a constructive trust in her pleadings nor did she introduce evidence concerning its applicability at trial. Furthermore, we find that the facts of this case do not support the imposition of such a trust. Appellee has been awarded the property and appellant reimbursed for her fair share of the equity. Point of error eight is overruled and the judgment affirmed.
NOTES
[1] Belkin v. Ray, 142 Tex. 71, 176 S.W.2d 162 (1943); Gonzalez v. Guajardo de Gonzalez. 541 S.W.2d 865 (Tex.Civ.App.Waco 1976, no writ).