Harry B. DAWSON, Appellant,

v.

Shirley Ann DAWSON, Appellee.

No. 09–88–263 CV.

Court of Appeals of Texas,
Beaumont.

March 23, 1989.

Sally A. Jones, Crosby, for appellant.

Judith Anne Horton, Conroe, for appellee.

OPINION

BURGESS, Justice.

This is a limited appeal from a decree of divorce. Mr. Dawson appeals the characterization of certain real property as community and its subsequent award to Mrs. Dawson. We reverse and remand.

The property in question is lots 29, 30 and 31 of the Silver Trails Addition in Montgomery County, Texas. Mr. Dawson claims the trial court erred in its characterization because there was no evidence to support its findings. Mrs. Dawson introduced into evidence a warranty deed in the names of both herself and Mr. Dawson. The parties also gave the following testimony concerning the property:

[Mr. Dawson (on direct examination):]

Q And then y'all married and where did you live when you first married?

A Route two, box 1849, New Caney, Texas.

Q Now, what property is that?

A It's Lot 30 in Silver Trails, New Caney Texas.

Q And was there any property adjoining that?

A Yes, two other lots, 29 and 31.

Q Whose is that?

A Mine.

Q When did you acquire that property?

A 1976, Spring of 1976.

Q On what terms did you acquire that property?

A Deed of trust, ten year loan.

Q Was it a contract deed or—

A Yes.

Q All right, and you had been making payments on that; is that correct?

A Yes.

[Mr. Dawson (on cross-examination):]

Q Okay. You indicated a moment ago that you were buying the Silver Springs property on a deed of trust. Wasn't it a contract for deed?

A I wasn't buying the Silver Springs property.

THE COURT: Silver Trails, I believe.

Q Sorry. Silver Trails. I think you said initially deed of trust. Is that what you meant or was it a contract?

A It was a contract.

Q And that contract for deed was paid off following your marriage?

A Yes.

Q Would it surprise you to learn that the deed to that property shows you and Ms. Dawson as the owner of the property?

A It would surprise me very much.

Q It would surprise you?

A Yes.

[Mrs. Dawson (on direct examination):]

Q Where did the Silver Trails property come from?

A Harry owned lot 29, 30 and 31 when I married him.

Q When you say owned it, what exactly did you mean?

A I did say he had purchased it. You have the books. I think a couple of months, maybe six months we married he had purchased—I may have the lots wrong, maybe like 29 and 30 or 30 and 31 and then he went back and purchased the other one.

Q But it was just several months before your marriage?

A I believe so. I would have to look at the books and see.

 . . . .

Q With respect to item 1.3 on the inventory. That is lots 29, 30 and 31 of Silver Trails. You indicated a while ago that the property, the contract for deed was entered into just a couple of months before you and Mr. Dawson were married?

A I believe that is correct. I would have to look at those books.

Q Okay.

A I believe it is five to six months. I'm not really clear on that.

Q Okay. The deed conveying that property to you, however, was dated in 1986; was it not?

A That is correct.

Q And the deed is to you and Mr. Dawson; is that correct?

A That is correct.

[Mrs. Dawson (on cross-examination):]

Q . . . We have talked about the Silver Trails property and believe the lots were 29, 30 and 31 and you agreed that Mr. Dawson had aquired [sic] the right to purchase those properties prior to your marriage; isn't that right?

A I know that he had aquired [sic] the property before I married him. Yes.

Q Okay. Now, and then you paid on that property all during the marriage; is that correct, or for a good part of the marriage?

A I paid on it since the day I married him, even the time he wasn't working.

Q Now, you and Mr. Dawson paid on it during the marriage?

A Correct.

Q And you have paid on it through monies that each of you earned during the marriage; is that correct?

A Part of it was. Yes, ma'am.

 There is, of course, a presumption that the property is community. *TEX. FAM.CODE ANN. sec. 5.02* (Vernon Supp. 1989). However, upon the introduction of contrary evidence, the presumption, which is not evidence, ceases to exist. *Empire Gas & Fuel Co. v. Muegge,* 135 Tex. 520, 143 S.W.2d 763, 767 (Comm'n App.1940, opinion adopted). Thus, while the warranty deed created the presumption, there was uncontroverted contrary evidence given by both parties. Furthermore, the character of property is determined not by the final acquisition of title, but by the origin or inception of title. *Jensen v. Jensen,* 665 S.W.2d 107, 109 (Tex.1984). The origin or inception of title occurs when a party has the right of claim to the property by virtue of which title is finally vested. *Strong v. Garrett,* 148 Tex. 265, 224 S.W.2d 471, 474 (1949).

■ Both parties testified Mr. Dawson had purchased the property under a contract for deed prior to the marriage. This determined the character of the property as separate. *See Roach v. Roach,* 672 S.W.2d 524 (Tex.App.—Amarillo 1984, no writ) and *Carter v. Carter,* 736 S.W.2d 775 (Tex.App. —Houston [14th Dist.] 1987, no writ). Where there is no evidence of gift, the fact that the deed is in both names does not change the character of the property. The trial court erred in characterizing the property as community.

Having erred in its characterization would not necessarily require a reversal if the property had been awarded to Mr. Dawson. Since it was not, the award of the property to Mrs. Dawson erroneously divested Mr. Dawson of his separate property. *TEX.FAM.CODE ANN. sec. 3.63* (Vernon Supp.1989); *Cameron v. Cameron,* 641 S.W.2d 210, 215 (Tex.1982); *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 142 (Tex.1977).

Mr. Dawson asks this court to reverse and render. This, however, would be manifestly unjust in that the court made its original division based upon the erroneous characterization. Had the court correctly characterized the property as separate, the community estate may have been entitled to reimbursement for community funds expended on the separate property or there may have been an entirely different division of the community estate. Therefore, having found error, in the interest of justice, we reverse and remand.

REVERSED AND REMANDED.

BROOKSHIRE, Justice, concurring.

Both parties clearly and unequivocally testified that Mr. Dawson had begun the purchase of property under a contract for deed. The contract for deed to several lots in a subdivision was executed at a time considerably prior to the marriage of the parties. Hence, the character of the property was established as being the separate real property of Mr. Dawson. See *Jensen v. Jensen,* 665 S.W.2d 107 (Tex.1984). See also, *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977).

The separate real estate of Mr. Dawson was awarded to Mrs. Dawson, thus totally divesting Mr. Dawson of his title to his separate land. This award by the court was not correct. *Eggemeyer, supra.*

During the marriage, the community estate made substantial payments toward the purchase price of the lots.

The crucial question, here, is the proper measure of and the application for substantial reimbursements from community property funds to pay off a sizeable part of the purchase money on Mr. Dawson's separate lots. The principles, generally, that govern reimbursement claims for prenuptial debts are not entirely settled. *See Penick v. Penick,* 32 Tex.Sup.Ct.Jour. 143, Dec. 14, 1988. The Supreme Court, in *Penick, supra,* wrote, in substance, that the confusion or uncertainty is, in part, attributable to the opinion in *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935) and *Colden v. Alexander,* 141 Tex. 134, 171 S.W.2d 328 (1943). The *Dakan, supra,* case provided that reimbursement for a purchase money advance should be at the cost to the contributing estate. The court, in *Penick, supra,* wrote, at page 144:

> "[W]e have gleaned the following rules applicable to purchase money reimbursement claims. As a threshold requirement, it is typically held that the contributing estate need not show enhancement or the benefit of its contribution as a condition of reimbursement. *See e.g., Nelson v. Nelson,* 713 S.W.2d 146 (Tex. App.—Texarkana 1986, no writ); *Fyffe v. Fyffe,* 670 S.W.2d 360 (Tex.App.—Texarkana 1984, writ dis'd w.o.j.). Instead, the payment by one marital estate of the debt of another creates a prima facie right of reimbursement."

The court then reasoned and emphasized that reimbursement is an equitable claim. Therefore, a court, sitting in equity, is bound to look at all of the surrounding facts and circumstances and then determine what is fair, just and equitable.

In the last analysis, the Supreme Court announced that great latitude must be given to the trial court in applying equitable

principles to evaluate a claim for reimbursement. *Id.* Lastly, in *Penick, supra,* the court wrote, at page 146:

"The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as that discretion subsequently exercised by the trial court in making a 'just and right' division of the community property. Tex.Fam.Code Ann. sec. 3.63 (Vernon Supp.1988)."

Following *Penick, supra,* I join in the reversal and remand.